14 F.3d 956
 Kermit SMITH, Jr., Petitioner-Appellee,
v.
Gary DIXON, Warden, Central Prison, Raleigh, North Carolina,
Respondent-Appellant.
Kermit SMITH, Jr., Petitioner-Appellant,
v.
Gary DIXON, Warden, Central Prison, Raleigh, North Carolina,
Respondent-Appellee.
 Nos. 91-4011, 91-4012.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 28, 1993.
Decided Jan. 21, 1994.
 
 ARGUED: Barry Steven McNeill and Joan Herre Byers, Sp. Deputy Attys. Gen., North Carolina Department of Justice, Raleigh, NC, for Appellant. C. Frank Goldsmith, Jr., Goldsmith & Goldsmith, P.A., Marion, NC; Martha Melinda Lawrence, Patterson, Harkavy & Lawrence, Raleigh, NC, for Appellee. ON BRIEF: Lacy H. Thornburg, Atty. Gen. of North Carolina, North Carolina Department of Justice, Raleigh, NC, for appellant. North Carolina Resource Center, Raleigh, NC, for Appellee.
 Before ERVIN, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, WILKINSON, WILKINS, NIEMEYER, HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges, and BUTZNER and SPROUSE, Senior Circuit Judges.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Kermit Smith, Jr. is a North Carolina prisoner who was sentenced to death following his conviction of the December 3, 1980 first-degree murder, second-degree rape, and common-law robbery of Whelette Collins. The district court granted Smith relief pursuant to 28 U.S.C.A. Sec. 2254 (West 1977), finding that because an instruction given to the jury that sentenced him to death was unconstitutionally vague, Smith was entitled to a new sentencing hearing. Smith v. Dixon, 766 F.Supp. 1370 (E.D.N.C.1991). The State of North Carolina, through the warden of the prison where Smith is incarcerated, appealed this decision. Smith cross appealed, arguing that the district court erred in failing to find that the additional grounds he advanced also provided a basis for relief. A panel of this court affirmed the district court in all respects. Smith v. Dixon, 996 F.2d 667 (4th Cir.1993). Thereafter, this court granted the State's motion for en banc consideration and vacated its prior opinion. We now reverse.
 
 I.
 Procedural Background
 
 2
 The gruesome facts surrounding Collins' long ordeal and subsequent murder are described in the opinion of the district court, Smith, 766 F.Supp. at 1373-74, and the decision of the Supreme Court of North Carolina affirming Smith's conviction and sentence on direct appeal, State v. Smith, 305 N.C. 691, 693-98, 292 S.E.2d 264, 266-69 cert. denied, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982). However, in order to fully appreciate how the procedural bar and harmless error principles discussed below apply here, a brief recitation of the facts and procedural history is helpful.
 
 
 3
 Smith kidnapped Collins and her two companions at gunpoint and took them to deserted woods. The physical and psychological ordeal Collins experienced lasted for many hours before she was murdered. While her companions were locked in the trunk of his automobile, Smith constantly threatened Collins with death and brutally raped her. Following the rape, Smith forced her to remain naked outside at night in below freezing temperatures for a substantial period of time, mocking her as she begged him for clothing or a blanket. Smith then bludgeoned Collins with a cinder block and dragged her body to a nearby quarry pond where he crammed her feet inside a cinder block in order to make her body sink. Collins' skull was fractured as a result of blunt trauma to her head; she died from these injuries. Her two companions escaped from the trunk of Smith's automobile physically unharmed and lived to supply many of the details of her ordeal.
 
 
 4
 After the jury convicted Smith, the trial court held a sentencing hearing in which it submitted four aggravating circumstances and five mitigating circumstances to the jury for consideration. Regarding one of the aggravating circumstances, whether the murder was "especially heinous, atrocious, or cruel," the court instructed:
 
 
 5
 [E]very murder is not especially heinous, it is not atrocious nor cruel. While every murder, if it results from an unlawful killing, of course, is a violation of the law, ... it does not necessarily mean that there is anything aggravated about it or that it was especially heinous or atrocious or cruel. And our Supreme Court has said that the words "especially heinous, atrocious or cruel" means extremely or especially or particularly heinous or atrocious or cruel. Heinous means extremely wicked or shockingly evil. Atrocious means marked by or given to extreme wickedness, brutality or cruelty, marked by extreme violence or savagely fierce. It means outrageously wicked and violent. Cruel means designed to inflict a high degree of pain, utterly indifferent to or the enjoyment of the suffering of others.
 
 
 6
 The jury found the aggravating circumstance set forth in N.C.Gen.Stat. Sec. 15A-2000(e)(5) (1988) in support of the imposition of the death sentence on three bases: that the murder was committed while the defendant was engaged in the commission of a rape of the deceased; that the murder was committed during the robbery of the deceased; and that the murder was committed during the kidnapping of the deceased. The jury also found the aggravating circumstance set forth in N.C.Gen.Stat. Sec. 15A-2000(e)(9) (1988), that the murder was "especially heinous, atrocious, or cruel." The members of the jury found the existence of one of the five mitigating factors that were submitted to them--that Smith committed the murder while "under the influence of [a] mental or emotional disturbance." N.C.Gen.Stat. Sec. 15A-2000(f)(2) (1988). The jury determined that the aggravating circumstances outweighed the mitigating circumstances, and recommended that Smith be sentenced to death.
 
 
 7
 Smith appealed his conviction and sentence, but did not challenge the constitutionality of the "especially heinous, atrocious, or cruel" aggravating factor, nor did he raise any of the other claims presently before this court. The Supreme Court of North Carolina conducted a review of the record pursuant to N.C.Gen.Stat. Sec. 15A-2000(d) (1988), determined that the evidence was sufficient to support the existence of each of the aggravating factors found by the jury, and affirmed Smith's conviction and sentence. State v. Smith, 292 S.E.2d at 276-77. The United States Supreme Court denied Smith's request for certiorari, and Smith's conviction became final on November 29, 1982. Smith v. North Carolina, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982).
 
 
 8
 In June 1983, Smith filed his first application for post-conviction relief, a motion for appropriate relief, with the Superior Court of Halifax County, North Carolina. See N.C.Gen.Stat. Sec. 15A-1415 (1988). Smith's motion for appropriate relief raised 57 separate grounds for relief, which were divided into five "Claims." Claims I through IV raised 43 issues relating to various pretrial rulings by the state trial court, jury selection, alleged errors occurring during the guilt and sentencing phases of Smith's trial, and challenges to the constitutionality of the death penalty in North Carolina, including an attack on the North Carolina system of appellate review of death sentences. Of particular relevance here, in Claim IV Smith raised for the first time the argument that the "especially heinous, atrocious, or cruel" statutory aggravating factor contained in Sec. 15A-2000(e)(9) was unconstitutionally vague, in violation of the Eighth and Fourteenth Amendments, and that the jury was not charged on a constitutionally limiting definition of this factor (Smith's "heinousness claim"). Further, all of the claims Smith currently asserts on cross appeal, except for his allegations of ineffective assistance of counsel, were raised for the first time in Claims I through IV. His remaining grounds for relief, set forth in Claim V, were allegations that his attorneys rendered ineffective assistance during his trial and appeal.
 
 
 9
 Without conducting a hearing or requesting a response from the State, the superior court entered a short summary order denying without discussion the 43 grounds for relief presented in Claims I through IV.[1] State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Aug. 19, 1983). The superior court directed the State to respond to Claim V and ordered an evidentiary hearing on it. Id. After conducting this hearing, the superior court denied Smith's allegations of ineffective assistance of counsel in an exhaustive 33-page order containing detailed findings of fact and conclusions of law. State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Dec. 16, 1983). Among those findings were ones that Smith's appellate counsel had read the transcript and notes, discussed the case with other attorneys, conducted research in those areas he deemed appropriate, and presented on appeal those claims on which he believed Smith had the best opportunity to prevail. Id., slip op. at 20. Smith's subsequent petitions for certiorari to the Supreme Court of North Carolina, State v. Smith, 333 S.E.2d 495 (N.C.1985), and the United States Supreme Court, Smith v. North Carolina, 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 565 (1985), were summarily denied.[2]
 
 
 10
 In May 1988, Smith petitioned the United States District Court for the Eastern District of North Carolina for relief pursuant to 28 U.S.C.A. Sec. 2254. The district court, in an opinion rendered prior to the decision of the Supreme Court in Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), rejected the State's contentions that Smith was barred from pursuing claims other than his ineffective assistance of counsel claims and those raised by him on direct appeal. Smith v. Dixon, 766 F.Supp. at 1376-77. Specifically, the district court held that Smith could pursue those issues raised for the first time in Claims I through IV of his 1983 motion for appropriate relief. Id. Relying on Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the district court concluded that it could properly address the grounds for relief raised in Smith's 1983 motion because the superior court, in denying relief on Claims I through IV of the motion, had not stated " 'clearly and expressly' " that it based its decision "on a state procedural bar." Smith v. Dixon, 766 F.Supp. at 1376 (quoting Harris, 489 U.S. at 263, 109 S.Ct. at 1043).[3]
 
 
 11
 Reaching the merits of the grounds for relief asserted in Smith's petition, the district court determined that each of the issues lacked merit, except for the heinousness claim. With respect to this latter issue, the district court concluded that Smith's sentencing jury had been instructed to weigh an unconstitutionally vague aggravating factor during the penalty phase of his trial. Id. at 1379-86. It further held that the Supreme Court of North Carolina had not cured this error by reweighing the evidence or conducting a constitutional harmless error analysis. Id. at 1386.
 
 
 12
 Although the district court stated that it "would not hesitate" to conclude that the facts surrounding Smith's crime satisfied the constitutionally limited construction of the "heinous, atrocious, or cruel" aggravating factor adopted by the Supreme Court of North Carolina, it determined that it lacked authority to review the error for harmlessness. See id. at 1386 n. 7. Consequently, it concluded that the writ must issue unless the Supreme Court of North Carolina proceeded to cure the error. Id. at 1386, 1396. The Supreme Court of North Carolina thereafter denied a request by the State for clarification of its earlier opinion that had rejected the issues raised in Smith's direct appeal, stating that it lacked jurisdiction to do so. State v. Smith, 330 N.C. 617, 412 S.E.2d 68 (1991) (" 'Believing that this Court has already fully addressed all the issues it can properly address within the limits of its appellate jurisdiction, the petition of the State is denied without prejudice to the State's right to seek appellate review in the federal system....' "). The district court then ordered its decision into effect. Smith v. Dixon, No. 88-337 (E.D.N.C. Dec. 2, 1991).
 
 
 13
 Both the State and Smith appeal. The State maintains that because the district court did not have the benefit of the decision of the Supreme Court in Coleman it erred in concluding that none of Smith's claims are procedurally barred. The State contends that a proper application of procedural bar principles, as elucidated in Coleman, leads to the conclusion that each of the grounds for relief presented by Smith to this court, except for his allegations of ineffective assistance of counsel, are procedurally barred. Smith, on the other hand, argues that the district court properly determined that the allegations of error raised in his federal habeas petition are not procedurally barred and that the district court properly granted him relief based on his heinousness claim. Smith asserts on cross appeal that he is also entitled to habeas relief because: the jury was erroneously led to believe that it could not consider mitigating evidence in sentencing unless it unanimously determined the existence of a mitigating circumstance; the sentencing instructions and arguments of counsel incorrectly informed the jury that its verdict was not a binding determination; the trial court improperly abridged his right to cross-examine a witness presented during the guilt phase of his trial; and his appellate and trial counsel were ineffective. We consider each of these contentions in turn.
 
 II.
 Procedural Default
 A.
 
 14
 As a threshold matter, this court must determine whether it is appropriate for a federal habeas court to review the merits of Smith's federal claims or whether Smith has procedurally defaulted them. Federal habeas courts generally "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, --- U.S. ----, ---- - ----, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). This doctrine bars federal courts from addressing federal claims raised pursuant to Sec. 2254 when a state court has declined to grant relief because the petitioner failed to meet a state procedural requirement. Id. --- U.S. at ----, 111 S.Ct. at 2554. It is not enough that the state court could have rested its decision on the procedural bar; it actually must have based its decision on the adequate and independent state ground in order to bar federal habeas review. See Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985).
 
 
 15
 Because ambiguous state court decisions make it difficult for federal courts reviewing petitions pursuant to 28 U.S.C.A. Sec. 2254 to assess whether a state court based its decision on an independent and adequate state ground, the Supreme Court, in Harris v. Reed, 489 U.S. 255, 261-63, 109 S.Ct. 1038, 1042-43, 103 L.Ed.2d 308 (1989), established a conclusive presumption to assist federal courts in making this determination. The Harris Court held that "if 'it fairly appears that the state court rested its decision primarily on federal law,' " federal habeas courts must conclusively presume that a state decision does not rest on an independent and adequate state ground, "unless the state court's opinion contains a ' "plain statement" that [its] decision rests upon adequate and independent state grounds.' " Id. at 261, 109 S.Ct. at 1042 (alteration in original) (quoting Michigan v. Long, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983)). Two years later, in Coleman v. Thompson, the Court rejected the argument that the Harris presumption applies unless the last state court reviewing federal claims failed to include a clear statement that its decision rested on independent and adequate state procedural grounds. Coleman, --- U.S. at ----, 111 S.Ct. at 2557. Noting that "[a] broad presumption would [place] too great a burden on the state courts," the Court sought to explain its rejection of this argument by focusing on the justification for the Harris presumption. Id. --- U.S. at ---- - ----, 111 S.Ct. at 2558-59. The Court stressed that "[t]he [Harris] presumption, like all conclusive presumptions, is designed to avoid the costs of excessive inquiry where a per se rule will achieve the correct result in almost all cases." Id. --- U.S. at ----, 111 S.Ct. at 2558. The Court went on to state, "Per se rules should not be applied ... in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time." Id. Emphasizing that it is primarily concerns of comity and federalism "that underlie[ ] the application of the independent and adequate state ground doctrine in federal habeas," the Court concluded that the Harris presumption "applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for decision." Id. --- U.S. at ----, 111 S.Ct. at 2559.
 
 
 16
 The Coleman Court then explained that the Harris presumption did not apply to the ambiguous Virginia state-court order under scrutiny because the order fairly appeared to rest on a state procedural bar. Id. It reached this conclusion because, although the relief sought was based on federal constitutional law, the state order did not mention federal law and the state court "dismissed" rather than "denied" the action. Id.; Ylst v. Nunnemaker, --- U.S. ----, ----, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). In addition, the Court relied on the circumstances surrounding entry of the order, particularly the fact that the state had based its motion to dismiss on a state procedural bar. Coleman, --- U.S. at ----, 111 S.Ct. at 2559; Ylst, --- U.S. at ----, 111 S.Ct. at 2594 (noting reliance by the Coleman Court on surrounding circumstances in determining the applicability of the Harris presumption). The Court, however, has recognized that "such clues will not always, or even ordinarily, be available" for federal courts attempting to decide whether a state decision rests on an independent and adequate state ground. Ylst, --- U.S. at ----, 111 S.Ct. at 2594. With these controlling principles in mind, we must examine whether the summary order of the superior court denying relief on Claims I through IV of Smith's 1983 motion for appropriate relief fairly appears to rest primarily on federal law or to be interwoven with federal law, or whether the summary order fairly appears to rest on an adequate and independent state ground.
 
 B.
 
 17
 Smith contends that the Harris presumption applies here, making federal habeas review of all of his claims appropriate, because the summary order of the superior court denying relief on Claims I through IV of his 1983 motion for appropriate relief fairly appears to rest primarily on federal law. The State maintains that there is no indication that the summary order of the superior court adjudicating Claims I through IV of Smith's 1983 motion fairly appears to rest primarily on federal grounds or to be interwoven with federal law and that the circumstances surrounding entry of the order compel the conclusion that the order instead was based on state law. For the reasons set forth more fully below, we hold that the summary order adjudicating Claims I through IV of Smith's 1983 motion does not fairly appear to rest primarily on federal law or to be interwoven with federal law, but rather, fairly appears to rest on an independent state procedural bar.
 
 
 18
 Smith first argues that the summary order fairly appears to rest on federal law because it does not contain a plain statement that it is based on state law.[4] He contends that we may presume from the absence of reference to state law that the superior court addressed and decided the merits of the federal claims raised in Claims I through IV. We believe that this argument is misdirected. The Supreme Court has squarely rejected the contention that federal courts are free to examine federal claims in habeas unless the last state court reviewing those claims included a clear statement that the basis for its decision rested on an adequate and independent state procedural ground. Coleman, --- U.S. at ----, 111 S.Ct. at 2557. Rather, the Court has stressed that "[a] predicate to the application of the Harris presumption is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law." Id. Thus, the failure of the superior court order to mention federal law must be the focus of our inquiry. Cf. id. --- U.S. at ----, 111 S.Ct. at 2559 (discussing why the Harris presumption did not apply and relying on the fact that the Virginia order did not mention federal law). This failure is extremely significant in view of the importance the Supreme Court has placed on the necessity of a clear indication that federal law controlled the decision prior to applying the Harris presumption. See id. --- U.S. at ---- - ----, 111 S.Ct. at 2558-59; cf. id. --- U.S. at ----, 111 S.Ct. at 2559 ("In the absence of a clear indication that a state court rested its decision on federal law, a federal court's task will not be difficult."). Indeed, we find the failure of the summary order to refer to federal law to be compelling evidence that the summary order does not fairly appear to rest on federal law or to be interwoven with federal law.
 
 
 19
 Likewise, we reject Smith's suggestion that we should assume from the fact that his motion raised federal issues and the summary order failed to mention state law, that the superior court rested its decision on federal law. See id. --- U.S. at ---- - ----, 111 S.Ct. at 2557-58 (rejecting Coleman's argument that the Harris presumption "applies in all cases in which a habeas petitioner presented federal claims to the state court" and that court failed to make plain that it was denying relief on the basis of state procedural grounds). In every case in which a federal habeas court is called upon to assess the applicability of the Harris presumption, a state court will have been asked to grant relief on a federal claim. Accordingly, if the mere fact that a state court was asked to rule on a federal claim but failed to include a plain statement that the basis for its decision was state law were a sufficient basis for a federal habeas court to find that the state order fairly appears to rest on federal law, there would be little reason for such a predicate requirement.
 
 
 20
 In addition to the failure of the summary order to refer to federal law, we also find the circumstances surrounding entry of the order indicative of reliance by the superior court on a state procedural bar as the basis for its decision. In order to fully appreciate the significance of these circumstances, it is necessary to understand the requirements that North Carolina law imposes upon superior court judges in adjudicating motions for appropriate relief and to recognize that each of the issues contained in Claims I through IV were subject to summary denial under a state procedural bar.
 
 
 21
 Under North Carolina law, post-conviction collateral challenges to criminal convictions are raised in a motion for appropriate relief. See N.C.Gen.Stat. Sec. 15A-1411 (1988). Certain issues presented to a superior court in a motion for appropriate relief are subject to being summarily denied pursuant to N.C.Gen.Stat. Sec. 15A-1419(a) (1988), which provides in pertinent part:
 
 
 22
 The following are grounds for the denial of a motion for appropriate relief:
 
 
 23
 ....
 
 
 24
 (2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment ... unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.
 
 
 25
 (3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.
 
 
 26
 N.C.Gen.Stat. Sec. 15A-1419(a).
 
 
 27
 Smith maintains that Sec. 15A-1419(a) merely provides the superior court with one avenue for disposition of a motion for appropriate relief when the motion asserts grounds that were raised on direct appeal or that were not, but reasonably could have been, raised on direct appeal. However, because Sec. 15A-1419(a) is permissive, his argument continues, the superior court may, consistent with North Carolina law, ignore the Sec. 15A-1419(a) procedural bar and reach the merits of these types of claims whenever it chooses. We disagree.
 
 
 28
 Although Sec. 15A-1419(a) is phrased in permissive language, a review of the statute as a whole makes plain that Sec. 15A-1419(a) is a mandatory provision. Subsection (b) of 15A-1419 provides an exception to Sec. 15A-1419(a). It states:
 
 
 29
 Although the court may deny the motion [for appropriate relief] under any of the circumstances specified in this section, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious.
 
 
 30
 N.C.Gen.Stat. Sec. 15A-1419(b) (1988). Because a superior court would already be authorized to refuse to deny a motion presenting issues subject to denial under Sec. 15A-1419(a) and to reach the merits of those issues if that section were a permissive provision, viewing Sec. 15A-1419(a) as permissive, rather than mandatory, would render the Sec. 15A-1419(b) exception meaningless. "It is an axiom of statutory construction that courts are obliged to give effect, if possible, to every word used by the legislature." See Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.), 960 F.2d 1242, 1247 (4th Cir.1992).
 
 
 31
 Moreover, prior to the adoption of Sec. 15A-1419(a) in 1977, the law of North Carolina was clear that a superior court could not consider issues in post-conviction proceedings that could have been, but were not, raised on direct appeal. See Reed v. Ross, 468 U.S. 1, 8 n. 5, 104 S.Ct. 2901, 2906 n. 5, 82 L.Ed.2d 1 (1984) ("Under North Carolina law ... errors that could have been raised on appeal may not be raised for the first time in post-conviction proceedings."); State v. Abernathy, 36 N.C.App. 527, 531-32, 244 S.E.2d 696, 699 (same), disc. rev. denied, 295 N.C. 552, 248 S.E.2d 730 (1978); State v. White, 274 N.C. 220, 226, 162 S.E.2d 473, 477 (1968) (noting that defendant not entitled to raise error for first time in a post-conviction proceeding unless failure to raise was for reasons beyond the defendant's control); Cole v. Stevenson, 620 F.2d 1055, 1060-61 (4th Cir.) (same), cert. denied, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980). In addition, the official commentary accompanying Sec. 15A-1419 indicates that the legislature intended practice under Sec. 15A-1419 to follow this existing rule. See N.C.Gen.Stat. Sec. 15A-1419, official commentary ("[O]nce a matter has been litigated or there has been opportunity to litigate a matter, there will not be a right to seek relief by additional motions at a later date.... Subsection (b) contains the customary provision for the court, in its direction, [sic] to grant relief even though the right to relief is barred under the provisions of subsection (a)." (emphasis added)). Therefore, we believe that Sec. 15A-1419(a) requires a superior court judge ruling on a motion for appropriate relief to deny relief on issues that were previously raised on direct appeal or that could have been, but were not, raised on direct appeal, unless the court finds that the Sec. 15A-1419(b) exception applies. We reject Smith's contention that the superior court could, consistent with North Carolina law, simply ignore Sec. 15A-1419(a) and address the merits of issues that were raised on direct appeal or that could have been, but were not, raised on direct appeal.
 
 
 32
 Smith argues, however, that even if the statute is mandatory, it could not have applied to all of the issues presented in Claims I through IV. He concedes that 42 of the issues raised in Claims I through IV were subject to summary denial pursuant to Sec. 15A-1419(a). He maintains, however, that his challenge to the constitutional adequacy of the appellate review scheme for North Carolina capital cases, raised in Claim IV, was not eligible for summary disposition under Sec. 15A-1419(a) because he could not reasonably have raised it on direct appeal, and therefore this claim must have been decided on the merits. Because this issue was decided on the merits in the summary order, his argument continues, it is likely that all of the issues adjudicated by the summary order were similarly treated.
 
 
 33
 Notably absent from his argument is any reasoning supporting such a position or citation to authority for the proposition that this issue could not properly have been raised in his direct appeal. This omission is understandable because the Supreme Court of North Carolina has on direct review repeatedly entertained various challenges to the constitutionality of N.C.Gen.Stat. Sec. 15A-2000 (1988), which sets forth the North Carolina scheme for appellate review of capital felonies, without intimating that such a challenge is available only on collateral review. See, e.g., State v. Brown, 315 N.C. 40, 59, 337 S.E.2d 808, 823 (1985) (entertaining and rejecting arguments on direct appeal that the statute establishing proportionality review violates due process guarantees of the Fourteenth Amendment and unconstitutionally expands jurisdiction of the appellate court), cert. denied, 476 U.S. 1165, 106 S.Ct. 2293, 90 L.Ed.2d 733 (1986), overruled in part on other grounds by State v. Vandiver, 321 N.C. 570, 364 S.E.2d 373 (1988); State v. Williams, 304 N.C. 394, 409-10, 284 S.E.2d 437, 448 (1981), cert. denied, 456 U.S. 932, 102 S.Ct. 1985, 72 L.Ed.2d 450 (1982).
 
 
 34
 Again without the benefit of authority, Smith contends that it would have been impossible for him to have asserted his attack on the constitutional adequacy of the North Carolina system of appellate review of capital sentences because he claimed that the failure of the Supreme Court of North Carolina to articulate standards for proportionality review denied him effective assistance of counsel and that claims of ineffective assistance of counsel are not properly raised on direct review. However, careful scrutiny of this claim, captioned "The Constitutional Inadequacy of North Carolina's System of Appellate Review of Death Sentences," demonstrates that the gist of this claim was not one of ineffective assistance of counsel. Rather, this claim raises numerous attacks on the failure of the Supreme Court of North Carolina "to develop and to articulate a constitutionally adequate and meaningful system of appellate sentencing review, and to apply such a system in its review of [Smith's] case" in violation of the Sixth, Eighth, and Fourteenth Amendments. Motion for Appropriate Relief at 57, State v. Smith, Nos. 80-CR-15265, 15266, 15271 (N.C.Sup.Ct. filed June 6, 1983).
 
 
 35
 Be that as it may, Smith's argument in this claim does encompass an assertion that the failure of the Supreme Court of North Carolina to provide standards for review deprived him of his Sixth Amendment right to counsel because it rendered counsel unable to adequately prepare or present argument. While, as discussed at length below, allegations of ineffective assistance of counsel generally are properly raised on collateral review because an evidentiary hearing exploring counsel's alleged unprofessional errors and their prejudicial impact on the defendant is necessary, nothing prevented Smith from adequately raising this claim on direct review. Smith's attack on the constitutional adequacy of the North Carolina appellate review scheme raised a legal question concerning the effect of the failure of the Supreme Court of North Carolina to develop standards governing capital sentencing review; the claim did not assert that his appellate counsel committed unprofessional errors resulting in prejudice to him. Therefore, this argument properly would have been presented on direct review. Indeed, as the State noted in its supplemental brief and attachments, two capital defendants have raised this exact issue before the Supreme Court of North Carolina on direct review and that court rejected the issue on the merits. See State v. Williams, 305 N.C. 656, 689-91, 292 S.E.2d 243, 263-64 (rejecting proportionality and other arguments raised by Williams not specifically addressed in the opinion, one of which, presented in Williams' Appellant's Brief at page 136 by incorporating Pinch's argument by reference, was that Williams would be denied effective assistance of counsel if the Supreme Court of North Carolina failed to adopt criteria upon which proportionality review would be conducted), cert. denied, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982); State v. Pinch, 306 N.C. 1, 34-37, 292 S.E.2d 203, 228-29 (rejecting Pinch's arguments that the Supreme Court of North Carolina should adopt additional procedures to assist proportionality review; Pinch's argument was based in part on the claim, raised in his Appellant's Brief at page 100, that without such procedures he would be denied effective assistance of counsel), cert. denied, 459 U.S. 1056, 103 S.Ct. 474, 74 L.Ed.2d 622 (1982). Thus, all of the grounds for relief raised by Smith in Claims I through IV, including his challenge to the constitutionality of the North Carolina appellate review scheme, were subject to summary denial pursuant to Sec. 15A-1419(a).
 
 
 36
 Smith could have challenged on direct appeal to the Supreme Court of North Carolina the constitutionality of the Sec. 15A-2000(e)(9) heinousness aggravating factor and instruction; therefore, if presented in a later motion for appropriate relief, this claim was subject to summary denial under Sec. 15A-1419(a)(3). Further, the other grounds for relief pursued in Smith's cross appeal are also issues that were not, but that could reasonably have been, raised in Smith's direct appeal; therefore, these issues too are subject to dismissal under Sec. 15A-1419(a)(3). Accordingly, unless the superior court determined that the exception contained in Sec. 15A-1419(b) applied, it was required under North Carolina law to deny these claims as procedurally defaulted under Sec. 15A-1419(a). The Sec. 15A-1419(b) exception is the only authority that the superior court had, consistent with North Carolina law, to reach the merits of these defaulted issues.
 
 
 37
 Smith maintains that the superior court must have reached and decided the merits of Claims I through IV of Smith's 1983 motion under the Sec. 15A-1419(b) exception. Section 15A-1419(b) permits the superior court for good cause shown and in the interest of justice to grant a motion for appropriate relief that is otherwise meritorious. Acknowledging that he did not advance an argument before the superior court demonstrating that good cause existed to excuse his failure to pursue the issues raised in Claims I through IV during his direct appeal,[5] Smith nevertheless asserts that good cause was present, at least insofar as the heinousness claim was concerned, because the claim presented clear error, justifying its consideration under Sec. 15A-1419(b). Smith offers no explanation, however, of why a superior court might determine that an issue presented clear error, justifying its consideration under Sec. 15A-1419(b), but fail to grant relief on this basis. In our view, the record is devoid of any basis upon which this court reasonably may conclude that the superior court might have found good cause for Smith's failure to raise the issues presented in Claims I through IV in his direct appeal and might have decided to apply the Sec. 15A-1419(b) exception. The absence of such a basis is consistent with a disposition under Sec. 15A-1419(a) and is inconsistent with a disposition under Sec. 15A-1419(b). This circumstance is the first of several we find to evince that the superior court based its summary order on Sec. 15A-1419(a).
 
 
 38
 Next, we consider the failure of the superior court to conduct a hearing on Claims I through IV. Smith contends that the superior court was not required to conduct a hearing in order to reach the merits of issues under Sec. 15A-1419(b) that the superior court was otherwise procedurally barred from considering by Sec. 15A-1419(a). Under North Carolina law, however, a superior court is required to conduct a hearing on a motion for appropriate relief "unless the court determines that the motion is without merit." N.C.Gen.Stat. Sec. 15A-1420(c)(1) (1988).[6] Thus, Sec. 15A-1420(c)(1) requires a superior court to conduct a hearing on a motion for appropriate relief--even those motions raising only questions of law--unless the court concludes that the motion lacks merit.[7] Smith is unable to explain how Claims I through IV simultaneously could be "without merit," so that a hearing on them was not required under Sec. 15A-1420(c)(1), but be "otherwise meritorious," so that the superior court could consider them on the merits under Sec. 15A-1419(b). The denial of Claims I through IV without a hearing is consistent with a disposition under Sec. 15A-1419(a), but is inconsistent with a disposition under the Sec. 15A-1419(b) exception. We find the failure of the superior court to conduct a hearing on Claims I through IV compelling evidence that the basis of its order was Sec. 15A-1419(a) rather than the merits of these claims.
 
 
 39
 Furthermore, Smith concedes that some of the issues raised in Claims I through IV of his 1983 motion for appropriate relief had been raised and rejected on the merits by the Supreme Court of North Carolina on direct appeal. Section 15A-1419(a)(2) provides for summary denial of issues raised in a motion for appropriate relief that were previously decided on appeal. In the absence of any proffered reason why relitigation of these claims would have been proper, the superior court is precluded from relitigating issues decided by the Supreme Court of North Carolina. See N.C.Gen.Stat. Sec. 15A-1419(a)(2); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168, 59 S.Ct. 777, 780-81, 83 L.Ed. 1184 (1939) (decision of higher court forecloses relitigation of issues the mandate lays to rest). Smith did not proffer any reason to the superior court as a basis to conclude that it could properly reconsider the merits of issues raised in Claims I through IV that had already been decided by the Supreme Court of North Carolina; nor is Smith able to offer any such reason to this court. Therefore, at least with respect to those issues contained in Claims I through IV that had previously been raised on direct appeal, in order to proceed in accordance with North Carolina law, the superior court must have relied on Sec. 15A-1419(a)(2).
 
 
 40
 In denying relief on Claims I through IV, the superior court drew no distinction between those issues it was required to deny under Sec. 15A-1419(a)(2), because they had previously been decided by the Supreme Court of North Carolina, and those issues that were subject to denial under Sec. 15A-1419(a)(3), because they could have been, but were not, raised in Smith's direct appeal. Instead, the superior court denied all of the claims with the same three sentences. That the superior court necessarily relied on Sec. 15A-1419(a) at least in part in disposing of the issues raised in Claims I through IV, and utilized the same language to dispose of both types of issues, is powerful support for the conclusion that the superior court based its entire summary order on Sec. 15A-1419(a).
 
 
 41
 Finally, the disparate treatment accorded the issues raised in Claims I through IV as compared with the treatment received by those issues raised in Claim V indicates that the superior court based its summary order disposing of Claims I through IV on the procedural bar contained in Sec. 15A-1419(a) rather than on the merits of the issues raised therein. As previously noted, all of the issues raised in Claims I through IV were subject to summary disposition pursuant to Sec. 15A-1419(a) because they were either raised on direct appeal or were issues that reasonably could have been, but were not, raised on direct appeal. Each of the grounds for relief presented in Claim V alleged ineffective assistance of counsel at various stages of Smith's proceedings. Allegations of ineffective assistance of counsel are generally not properly raised on direct appeal because of the necessity of an evidentiary hearing to determine whether counsel's assistance was ineffective and, if so, whether the defendant was prejudiced as a result. See State v. Dockery, 78 N.C.App. 190, 191-92, 336 S.E.2d 719, 721 (1985) (noting that although there are exceptions, "[t]he accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal," due to the need for evidentiary development of these claims); State v. Vickers, 306 N.C. 90, 94, 291 S.E.2d 599, 603 (1982); cf. State v. Kinch, 314 N.C. 99, 106, 331 S.E.2d 665, 669 (1985). Accordingly, allegations of ineffective assistance usually would not be subject to summary denial under Sec. 15A-1419(a). See N.C.Gen.Stat. Sec. 15A-1419 official commentary.
 
 
 42
 Without requesting a response from the State and without conducting a hearing on Smith's motion, the superior court entered a summary order denying in three sentences the 43 grounds for relief presented in Smith's Claims I through IV. In sharp contrast, the superior court directed the State to respond and ordered an evidentiary hearing on Claim V. After conducting this hearing, the superior court issued a 33-page order. This order, denying relief on Claim V, contained 23 pages of detailed factual findings and thoroughly addressed Smith's allegations of ineffective assistance of counsel in the investigatory, preparatory, trial, and appellate stages of the state proceedings. In our view, the profound difference in the treatment accorded by the superior court to issues raised in Smith's Claim V, which were not subject to summary denial, vis-a-vis those raised in Claims I through IV, which were subject to summary denial, supports the conclusion that the superior court actually relied on Sec. 15A-1419(a) in summarily denying Smith's Claims I through IV. Indeed, nothing other than reliance on Sec. 15A-1419(a) can fully account for this disparate treatment.[8]
 
 
 43
 Smith maintains, on the other hand, that the summary order and the circumstances surrounding its entry suggest that the superior court based its decision on the merits of his claims. He asserts that the language in the summary order denying Claims I through IV of Smith's motion, which states that the superior court "considered the arguments in support of the claims" and that they "set forth no probable grounds for relief," demonstrates that the superior court reached and decided the merits of the federal claims. We disagree. The Supreme Court in Coleman considered a similar argument--the state court order stated that "it was issued '[u]pon consideration' of all the filed papers, including Coleman's petition for appeal and the Commonwealth's brief in opposition, both of which discussed the merits of Coleman's federal claims." Coleman, --- U.S. at ----, 111 S.Ct. at 2561 (alteration in original). The Court acknowledged that "the Virginia Supreme Court's 'consideration' of all filed papers add[ed] some ambiguity;" however, the Court concluded that this ambiguity was insufficient to outweigh the other surrounding circumstances pointing toward a conclusion that the state order was based on an independent state procedural bar. Id. Similarly, the fact that the superior court stated that it considered Smith's petition, which raised federal claims, is not sufficient to override the surrounding circumstances tending to show that the summary order was based on the procedural bar mandated by Sec. 15A-1419(a). In addition, the "set forth no probable grounds for relief" language provides little insight into the reason Smith's Claims I through IV set forth no probable grounds for relief.[9] Indeed, this language suggests that it is at least as likely that the superior court concluded that the issues raised by Smith provided no basis for relief because they were procedurally barred as that they lacked substantive merit. And, logic and reason dictate that it is unlikely that a busy state trial judge presented with a 76-page motion for post-conviction relief containing in excess of 50 issues--some of which raise complicated constitutional questions--would, without so much as requesting a response from the State or conducting a hearing, consider and decide the merits of those claims when the judge is required to deny them under a state procedural bar statute.
 
 
 44
 Smith next contends that the fact that the superior court "denied" Claims I through IV rather than "dismissed" them is evidence that the superior court decided these claims on the merits. Again, we must differ; this fact does not demonstrate that the superior court reached the merits of Claims I through IV and based its decision on federal grounds. North Carolina law provides for denial--rather than dismissal--of motions for appropriate relief presenting grounds that either were decided on direct appeal or that could have been, but were not, raised earlier. See N.C.Gen.Stat. Sec. 15A-1419(a) ("The following are grounds for the denial of a motion for appropriate relief...."). Therefore, a "denial" of Smith's motion was equally compatible with a denial on the merits or a denial pursuant to Sec. 15A-1419(a).
 
 
 45
 In addition, Smith argues that the State has conceded that the superior court reached the merits of Smith's claims. Although the document is not a part of the record before us, according to Smith, in its petition to the Supreme Court of North Carolina following issuance of the memorandum opinion by the district court, the State wrote that Smith's claim of unconstitutional vagueness "initially surfaced during Smith's first motion for appropriate relief and was summarily denied on the merits by the hearing court." In view of the unfaltering position of the State throughout these proceedings that the review of Smith's claims is procedurally barred, we do not view this misstatement as a concession that the superior court decided the claims on the merits. Certainly, the State has not taken an inconsistent position in the litigation in order to gain any type of advantage, nor is Smith able to demonstrate any prejudice arising from this inadvertent error.
 
 
 46
 Finally Smith implies that the failure of the State to answer his 1983 motion for appropriate relief and raise the procedural bar contained in Sec. 15A-1419(a) weighs in favor of a finding that the superior court reached the merits of his claims. While we recognize that the Coleman Court relied on the fact that Virginia had argued a state procedural bar as a basis for its motion to dismiss in finding that Coleman had procedurally defaulted his federal claim, see --- U.S. at ----, 111 S.Ct. at 2559-60, we cannot agree that merely because this circumstance is different we are compelled to reach a different result. North Carolina post-conviction procedure does not impose a specific time limit for responding to a motion for appropriate relief. See N.C.Gen.Stat. Secs. 15A-1411 et seq. (1988). Because the superior court issued its summary order denying Claims I through IV of Smith's 1983 motion before the State responded, there are simply no pleadings to which we can look, as did the Coleman Court, to assist in determining the grounds upon which the summary order was adjudicated. That the State did not respond to the motion for appropriate relief is not probative of the basis for the ruling of the superior court in Claims I through IV, so we view this factor as merely neutral.
 
 
 47
 In sum, we conclude that the summary order denying Claims I through IV of Smith's 1983 motion for appropriate relief does not fairly appear to rest on federal law or to be interwoven with federal law. The order makes no mention of federal law, and none of the language contained in the order clearly demonstrates that the superior court reached the merits. Moreover, the circumstances surrounding entry of the summary order demonstrate that it was based on Sec. 15A-1419(a). Section 15A-1419 is a mandatory procedural bar requiring a superior court adjudicating a motion for appropriate relief to summarily deny claims that come within the ambit of subsection (a), unless the court for good cause shown and in the interest of justice decides to grant an otherwise meritorious motion under subsection (b). Several factors, however, suggest that the superior court did not adjudicate Claims I through IV under the Sec. 15A-1419(b) exception. First, neither the record before us nor the record before the superior court demonstrated that any "good cause" was present to permit the superior court to reach the merits of Claims I through IV under Sec. 15A-1419(b). Second, it is undisputed that several of the issues raised by Smith in Claims I through IV previously had been ruled upon by the Supreme Court of North Carolina, and no change in circumstances or law permitted the superior court to address the merits of these claims again under the Sec. 15A-1419(b) exception. The superior court, therefore, must have relied on Sec. 15A-1419(a)(2) in denying these claims, a fact that points strongly toward a conclusion that the superior court was relying on the procedural bar provision contained in Sec. 15A-1419(a) in denying relief on all of the issues raised in Claims I through IV. Third, the superior court did not conduct a hearing on the motion for appropriate relief as it would have been required to do if it decided Claims I through IV had merit pursuant to Sec. 15A-1419(b). Finally, that each of the issues Smith raised in Claims I through IV were subject to summary disposition pursuant to Sec. 15A-1419(a) and in fact received summary disposition, while issues raised in Claim V, which were not eligible for summary treatment under Sec. 15A-1419(a), received exhaustive review, indicates that the superior court based its summary denial of Claims I through IV on Sec. 15A-1419(a). Although we cannot exclude the possibility that the superior court might have acted in contravention of state law, the fact that all of the circumstances surrounding entry of the summary order are consistent with a decision under Sec. 15A-1419(a) and inconsistent with a disposition on the merits is certainly strong evidence that the superior court based its summary order on state law and that the order does not fairly appear to rest primarily on federal grounds or to be interwoven with federal law. Thus, we conclude that the superior court based its summary order denying relief on Claims I through IV on Sec. 15A-1419(a), an independent state ground.C.
 
 
 48
 In order for a state procedural ground, such as Sec. 15A-1419(a), to provide an adequate basis for decision, thereby foreclosing federal habeas review of an issue, the state procedural bar must be applied "consistently or regularly." Johnson v. Mississippi, 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). Smith argues that the North Carolina courts do not apply the procedural bar contained in Sec. 15A-1419(a) regularly or consistently to capital cases. Consequently, he asserts that this state procedural ground is not adequate to support a conclusion that federal habeas review of the issues Smith presents here that were raised in Claims I through IV is procedurally barred.
 
 
 49
 As support for his contention that Sec. 15A-1419(a) is not regularly or consistently applied in North Carolina capital cases, Smith first asserts that the Supreme Court of North Carolina, on direct review of capital appeals, has reached the merits of issues that had been procedurally defaulted. See, e.g., State v. McCoy, 236 N.C. 121, 122, 71 S.E.2d 921, 922 (1952) (indicating that on direct review of capital cases court will examine the record ex mero motu for reversible error). These direct review cases, however, do not sustain Smith's contention that North Carolina courts do not regularly apply the procedural bar contained in Sec. 15A-1419(a), which applies on collateral review. On the contrary, because the Supreme Court of North Carolina has previously examined the entire record of the capital case for error on direct review, including error that was not properly preserved, there is every reason to believe that a court would, except in the most exceptional circumstances, rely on Sec. 15A-1419(a) on collateral review.[10]
 
 
 50
 Smith next contends that the existence of the Sec. 15A-1419(b) exception indicates that Sec. 15A-1419(a) is not adequate to foreclose federal habeas review. This argument lacks merit. As we have previously recognized, "consistent or regular application of a state's procedural default rules does not mean undeviating adherence to such rule admitting of no exception." Meadows v. Legursky, 904 F.2d 903, 907 (4th Cir.) (en banc), cert. denied, 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990); see also Wise v. Williams, 982 F.2d 142, 143-44 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2940, 124 L.Ed.2d 689 (1993). Therefore, the existence of the Sec. 15A-1419(b) exception does not signify that Sec. 15A-1419(a) is not applied consistently and regularly. Quite the contrary, that there is a necessity for occasional exceptions to be made is evidence that the state rule is consistently and regularly enforced. See Wise, 982 F.2d at 143-44. Because Smith has failed to demonstrate that the procedural bar contained in Sec. 15A-1419(a) is not consistently and regularly applied by the North Carolina courts, we conclude that it is adequate to support the state court judgment. See Sochor v. Florida, --- U.S. ----, ----, 112 S.Ct. 2114, 2120, 119 L.Ed.2d 326 (1992).[11]D.
 
 
 51
 In sum, we hold that the Harris presumption is not applicable in determining whether the superior court rested its summary order on an adequate and independent state ground. Because the circumstances surrounding entry of the summary order make evident that it was based on Sec. 15A-1419(a), an adequate and independent state ground for decision, we determine that Smith has procedurally defaulted those issues raised for the first time in Claims I through IV of his 1983 motion. Of the 43 claims raised in Claims I through IV of the 1983 motion for appropriate relief, Smith presents only four to this court: That the instruction to his sentencing jury on the aggravating factor of heinousness was unconstitutionally vague; that there is a reasonable likelihood that one or more of the jurors that sentenced him to death believed that, in weighing mitigating circumstances, they could consider only evidence that the jury unanimously agreed was mitigating; and that his state trial court violated Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by referring to the decision of the jury to impose the death sentence as a "recommendation." Each of these claims is procedurally barred.
 
 E.
 
 52
 Finally, Smith maintains that even if this court finds that he procedurally defaulted issues raised for the first time in Claims I through IV of his 1983 motion for appropriate relief, we should nevertheless review his heinousness claim because he can demonstrate an excuse justifying relief from the procedural bar. As the Supreme Court has recently stated:
 
 
 53
 In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.
 
 
 54
 Coleman, --- U.S. at ----, 111 S.Ct. at 2565. Smith maintains that he can demonstrate cause for the procedural default of his heinousness claim and actual prejudice resulting therefrom. He bases his cause-and-prejudice argument on his appellate attorney's alleged ineffectiveness in failing to raise the heinousness claim on direct appeal to the Supreme Court of North Carolina. In addition, he contends that our refusal to consider his procedurally defaulted heinousness claim will result in a miscarriage of justice. These contentions lack merit.
 
 
 55
 An attorney's ineffectiveness may constitute cause for excusing a procedural default when a petitioner has a constitutional right to effective assistance of counsel and when that assistance is " 'constitutionally ineffective under the standard established in Strickland v. Washington, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).' " Coleman, --- U.S. at ----, 111 S.Ct. at 2566 (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Smith has a constitutionally protected right to effective assistance of counsel on direct appeal. See Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). Therefore, Smith may demonstrate cause based on ineffective assistance of counsel by establishing that his attorney's "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068.
 
 
 56
 It is unlikely that Smith could carry his burden of showing that counsel's performance was ineffective in view of the presumptively correct factual finding by the state court, see 28 U.S.C.A. Sec. 2254(d), that Smith's appellate counsel diligently researched the law and chose to present those grounds on which he believed Smith had the best chance of prevailing. In any event, assuming that Smith could demonstrate that his appellate counsel's failure to raise the heinousness claim on direct appeal fell below an objective standard of reasonableness, Smith fails to carry his burden to show prejudice. The facts underlying Smith's conviction and sentence are such that Smith is unable to demonstrate a probability sufficient to undermine our confidence that if his attorney had presented this claim the result of the proceeding would have been the same.
 
 
 57
 Because Smith cannot demonstrate that his attorney was constitutionally ineffective in failing to raise the heinousness claim on direct appeal, he cannot demonstrate cause to excuse his procedural default. Moreover, for all of the same reasons fully set forth below in addressing harmless error, Smith is unable to show actual prejudice as a result of his attorney's failure to raise the heinousness claim on direct appeal.
 
 
 58
 Smith also maintains that the refusal to consider his procedurally defaulted grounds will result in a miscarriage of justice. In order to demonstrate a miscarriage of justice to excuse the application of the procedural bar, Smith must show actual innocence. See Sawyer v. Whitley, --- U.S. ----, ----, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). In the context of the death penalty, a defendant "must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law." Id. --- U.S. at ----, at 2517. Absent the heinousness factor, Smith remained eligible for the death penalty based on the Sec. 15A-2000(e)(5) aggravating factor on three circumstances--Smith murdered Whelette while in the process of kidnapping, robbing, and raping her. Thus, Smith cannot show that no reasonable juror would have found him eligible for the death penalty without the heinousness factor. See id. --- U.S. at ---- - ----, 112 S.Ct. at 2523-24. Consequently, he has not shown that a failure by this court to address his heinousness claim will result in a miscarriage of justice.
 
 III.
 
 59
 Unconstitutionally Vague Heinousness Instruction
 
 
 60
 Although we conclude that this court should not address the merits of Smith's heinousness claim, we nevertheless believe that habeas relief would not be warranted even if we addressed the merits of this claim. The State properly concedes that the instruction to Smith's sentencing jury on the aggravating factor that the murder was "heinous, atrocious, or cruel" was unconstitutionally vague. See Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Thus, Smith's sentencing hearing was tainted with constitutional error. Furthermore, the State concedes that the Supreme Court of North Carolina did not cure this error by reweighing the aggravating and mitigating circumstances under a proper standard or by conducting harmless error analysis. Accordingly, were it appropriate for a federal habeas court to review the merits of this claim, Smith's death sentence would necessarily have to be set aside unless federal habeas courts are authorized to conduct harmless error analysis of this error and the error is determined to be harmless. We conclude that federal courts considering a petition pursuant to 28 U.S.C.A. Sec. 2254 properly may--indeed must--review trial errors, including the error occasioned by an unconstitutionally vague instruction on an aggravating sentencing factor, for harmlessness. Moreover, we believe that the error occasioned by the unconstitutionally vague heinousness instruction to the jury that sentenced Smith was harmless.
 
 A.
 
 61
 Some types of constitutional error pervade an entire proceeding. See Satterwhite v. Texas, 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988). Assessment of the impact of these errors is impossible and reversal is automatic. Id. at 256-57, 108 S.Ct. at 1797-98. On the other hand, the principle that "not all constitutional violations amount to reversible error" is firmly established. Id. at 256, 108 S.Ct. at 1797. Since the landmark decision in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court "has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless." Arizona v. Fulminante, 499 U.S. 279, 306, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991). This "rule 'promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.' " Satterwhite, 486 U.S. at 256, 108 S.Ct. at 1797 (quoting Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986)).
 
 
 62
 The Supreme Court has expressly approved of federal habeas courts conducting harmless error analysis, see, e.g., Rose, 478 U.S. at 584, 106 S.Ct. at 3109 (directing Court of Appeals for the Sixth Circuit to conduct harmless error review of an erroneous malice instruction on remand), and has held that harmless error analysis may be applied to errors occurring in capital proceedings, see, e.g., Satterwhite, 486 U.S. at 256-58, 108 S.Ct. at 1797-98 (approving harmless error analysis of admission in capital sentencing proceeding of psychiatric testimony obtained in violation of Sixth Amendment). Furthermore, the Court has acknowledged that federal habeas courts may apply harmless error analysis to constitutional errors in state capital proceedings. See Cabana v. Bullock, 474 U.S. 376, 391 n. 6, 106 S.Ct. 689, 700 n. 6, 88 L.Ed.2d 704 (1986). In its most recent decision addressing the application of harmless error analysis to constitutional errors raised in habeas, the Court stated unequivocally that habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " Brecht v. Abrahamson, --- U.S. ----, ----, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting United States v. Lane, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)). Thus, the Court has made plain that although a petitioner has demonstrated that his state trial was tainted with constitutional error, when that error is one that may be reviewed for harmlessness, a federal habeas court must not grant habeas relief unless the petitioner also demonstrates that the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).[12]
 
 1.
 
 63
 Smith acknowledges that Brecht announced a rule of general application requiring federal habeas courts to apply harmless error analysis to errors of the trial type prior to granting habeas relief. Nevertheless, he contends that only the state courts may conduct harmless error review of the error occasioned by the sentencing jury's weighing of an unconstitutionally vague instruction on an aggravating factor in the first instance. Although the Supreme Court has never expressly ruled that federal habeas courts may conduct a harmless error analysis of the particular error at issue here, it follows from the prior decisions of the Court that this review is proper. The Supreme Court has never drawn the distinction that Smith seeks to create between federal and state court review in assessing the propriety of harmless error analysis. Instead, in evaluating whether review for harmless error could appropriately be conducted, the Court has consistently focused on the type of error that was committed and whether that error is one the impact of which may be determined by a reviewing court. See, e.g., Fulminante, 499 U.S. at 306-13, 111 S.Ct. at 1263-66 (collecting cases and holding that "trial errors" may be assessed for harmlessness, while those errors that constitute a "structural defect affecting the framework within which the trial proceeds" may not); Rose, 478 U.S. at 579, 106 S.Ct. at 3106 ("[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."). And, the Court has previously stated that the error occasioned by the weighing of an unconstitutionally vague aggravating factor by a state sentencing body in deciding whether to sentence a defendant to death is a type of constitutional error susceptible to evaluation for harmlessness. See, e.g., Clemons v. Mississippi, 494 U.S. 738, 752, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990). Thus, the teachings of Brecht require that we determine that the error that occurred in Smith's sentencing proceeding was harmful before we may grant habeas relief.
 
 
 64
 Moreover, this court is qualified to judge the effect that an unconstitutionally vague instruction on an aggravating factor had on the conclusion reached by the jury. This is precisely the analysis we are required to conduct in assessing whether Smith was prejudiced by his counsel's allegedly ineffective assistance in failing to raise the heinousness claim on direct appeal. In addition, harmless error analysis is essentially the same analysis we are required to perform in order to decide whether Smith has shown actual prejudice to excuse his procedural default of the heinousness claim. Harmless error analysis, as with each of these other analyses, requires a federal habeas court to review the cold record and draw a legal conclusion concerning the probable impact the error had in the context of the proceedings as a whole. See Brecht, --- U.S. at ----, 113 S.Ct. at 1722. It would be illogical to hold, on the one hand, that we are able to assess the effect of the error for purposes of deciding prejudice under Strickland, or for purposes of determining actual prejudice to excuse Smith's procedural default, but find that we are unable to evaluate the effect of this error in determining prejudice for purposes of harmless error analysis.
 
 
 65
 Thus, support for our conclusion that federal habeas courts have the authority to review Smith's heinousness claim for harmlessness is fourfold. First, the Supreme Court has specifically approved of federal habeas courts conducting harmless error analysis in habeas, even in the context of errors occurring in capital sentencing; indeed, federal habeas courts must not grant habeas relief from state convictions or sentences based on trial error unless the petitioner can demonstrate that the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1722 (quoting Kotteakos, 328 U.S. at 776, 66 S.Ct. at 1253). Second, the Court has always analyzed the propriety of applying harmless error analysis based upon the type of error at issue, not on the particular court conducting the analysis. Third, in characterizing the error presented in Smith's heinousness claim as the type that may be assessed for harmlessness, the Court has acknowledged that this type of error is a "trial error." See Clemons, 494 U.S. at 752, 110 S.Ct. at 1450. And, fourth, this court must be qualified to assess the prejudicial impact of an unconstitutionally vague instruction on an aggravating factor because we are already required to conduct this same type of evaluation in the context of determining prejudice under Strickland and in deciding whether to excuse Smith's procedural default of his heinousness claim.
 
 
 66
 In addition, concerns of comity and federalism weigh in favor concluding that federal habeas courts are authorized to conduct harmless error analysis of the error at issue here. As stressed in Brecht, " 'Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1720 (quoting Engle v. Isaac, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)). Thus, before overturning final and presumptively correct state convictions or sentences on habeas review, federal courts must assess for harmlessness those errors that are eligible for this review in order to assure that the extraordinary relief provided by the writ is granted only to those " 'persons whom society has grievously wronged.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1719 (quoting Fay v. Noia, 372 U.S. 391, 441, 83 S.Ct. 822, 850, 9 L.Ed.2d 837 (1963)).
 
 2.
 
 67
 The arguments advanced by Smith to the contrary are unconvincing. He first relies on language in Supreme Court opinions addressing the constitutionality of instructions on aggravating factors similar to those given to the jury that sentenced Smith and discussing whether death sentences returned based on those instructions could be upheld. He maintains that the Supreme Court has carved out for special treatment the error occasioned by the jury's weighing of an unconstitutionally vague aggravating factor during capital sentencing, and has held that for this single type of error, the state courts must conduct harmless error analysis in the first instance. Careful examination of the opinions on which Smith relies, however, discloses that they do not sustain the conclusion he advances.
 
 
 68
 In assessing the meaning of the language on which Smith relies, one must keep in mind that none of the opinions containing this language were ones in which a lower federal court had conducted, or refused to conduct, harmless error review. Thus, none of the opinions actually addresses the issue that is presently before this court. Furthermore, careful scrutiny of these opinions reveals that the language upon which Smith relies does not indicate that the Court disapproves of federal habeas courts conducting harmless error analysis with respect to this error.
 
 
 69
 For example, in the first case relied on by Smith, Richmond v. Lewis, --- U.S. ----, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), the Court reversed a judgment of the Court of Appeals for the Ninth Circuit, which held that the petitioner's death sentence could be upheld despite the petitioner's challenge to an instruction directing his sentencing jury to consider an "especially heinous, cruel or depraved" aggravating factor, Ariz.Rev.Stat.Ann. Sec. 13-703(F)(6) (1989). The Ninth Circuit had reasoned that the factor had been constitutionally narrowed, so there was no error. Richmond, --- U.S. at ----, 113 S.Ct. at 534. It further held that in any event the sentence could stand because Arizona was not a weighing state, so elimination of one factor, when sufficient other support for the sentence existed, did not require reversal. Id.
 
 
 70
 On review before the Supreme Court, the State did not contend that the aggravating factor had been constitutionally narrowed at the time of the petitioner's sentencing or that Arizona was not a weighing state. See id. Nor did it argue that the error was harmless. Id. --- U.S. at ----, 113 S.Ct. at 535. Instead, the State based its argument for upholding the sentence solely on the theory that in reviewing the sentence, a majority of the Supreme Court of Arizona had actually reweighed the mitigating and aggravating circumstances, thereby curing the constitutional error. See id. Finding that although it had "not specif[ied] the degree of clarity with which a state appellate court must reweigh in order to cure an otherwise invalid death sentence," the Court concluded that "[a]t a minimum," it must be able to "determine that the state court actually reweighed." Id. In this context, it repeated its prior statements that the only ways in which this error may be cured are by "constitutional harmless-error analysis" or by reweighing of the aggravating and mitigating circumstances at the state trial or appellate levels. See id. Expounding on this latter method of cure in the next sentence, the Court stated that "[w]here the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand." Id.
 
 
 71
 Reading these statements out of context, Smith contends that this passage indicates that only a state court may cure this error. However, the language cannot be read in this manner, for to do so would mean not only that state courts are the only courts that can cure the error, but also that reweighing, to the exclusion of harmless error analysis, is the only method for doing so. Harmless error analysis does not involve conducting a new sentencing calculus. Rather, it calls upon the reviewing court to draw a legal conclusion based on a review of the record. Therefore, Smith's proposed reading of the passage flatly contradicts the sentence immediately preceding it, which approves of harmless error review. Accordingly, the Court was attempting to illuminate how clear a state court must be in undertaking the reweighing process. The answer the Court sets forth is that the state court must demonstrate that it has actually undertaken a new sentencing calculus. Read with its more natural meaning, this passage provides no insight into whether federal habeas courts may conduct harmless error analysis of this error.
 
 
 72
 As another example, Smith relies on Stringer v. Black, --- U.S. ----, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). The Stringer Court stated that the "use of a vague ... aggravating factor in the weighing process invalidates the sentence and ... requires constitutional harmless-error analysis or reweighing in the state judicial system" if the sentence is to stand. Id. --- U.S. at ----, 112 S.Ct. at 1140. This language is at best ambiguous concerning whether harmless error analysis as well as reweighing must be conducted by the state judiciary. In view of the fact that the Court has never before drawn this distinction with respect to harmless error analysis, as opposed to factual determinations necessary to support the state judgment, cf. Cabana, 474 U.S. at 391 & n. 6, 106 S.Ct. at 700 & n. 6, the better reading of this passage is that "in the state judicial system" modifies only "reweighing"--just as "constitutional" modifies only "harmless-error analysis," Stringer, --- U.S. at ----, 112 S.Ct. at 1140.
 
 
 73
 Similar scrutiny of the other cases on which Smith relies demonstrates that they do not support his position. In Sochor v. Florida, --- U.S. ----, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), the Court, on direct review from the Florida Supreme Court, addressed whether the state appellate court had successfully cured the error occasioned by a trial judge's weighing of an unconstitutionally vague aggravating factor in deciding to sentence Sochor to death. Id. --- U.S. at ----, 112 S.Ct. at 2123. It is not surprising that, in the context of direct review from state court, the Supreme Court framed its discussion in terms of explaining how "state court ... review for harmless federal error will pass federal scrutiny." Id. While this discussion recognizes that state courts may conduct harmless error analysis, it does not indicate that review of this error for harmlessness by federal habeas courts is improper. Because the posture of the remaining Supreme Court cases on which Smith relies is essentially the same as that presented in Sochor, they likewise cannot be viewed as addressing, even by negative implication, whether federal habeas courts may review this error for harmlessness. See Clemons v. Mississippi, 494 U.S. 738, 754, 110 S.Ct. 1441, 1451, 108 L.Ed.2d 725 (1990); Barclay v. Florida, 463 U.S. 939, 958, 103 S.Ct. 3418, 3429, 77 L.Ed.2d 1134 (1983).
 
 
 74
 Harmless error analysis must necessarily be conducted on a cold record, whether the court be federal or state. See Fulminante, 499 U.S. at 295, 111 S.Ct. at 1257 ("The Court has the power to review the record de novo in order to determine an error's harmlessness."); see also Yates v. Evatt, 500 U.S. 391, ----, 111 S.Ct. 1884, 1895, 114 L.Ed.2d 432 (1991) ("[W]e have the authority to make our own assessment of the harmlessness of a constitutional error in the first instance."); United States v. Hastings, 461 U.S. 499, 510 & n. 8, 103 S.Ct. 1974, 1981 & n. 8, 76 L.Ed.2d 96 (1983) (noting that the Court was in same position to undertake the analysis as the court of appeals); Booker v. Dugger, 922 F.2d 633, 636 n. 4 (11th Cir.) ("Federal courts are not ... bound by state court rulings on harmless error."), cert. denied, --- U.S. ----, 112 S.Ct. 277, 116 L.Ed.2d 228 (1991). And, federal habeas courts routinely conduct harmless error analysis of errors occurring in capital cases. See, e.g., Gaskins v. McKellar, 916 F.2d 941, 950-51 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991); Waye v. Townley, 871 F.2d 18, 21 (4th Cir.), cert. denied, 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 710 (1989). Such analysis invariably calls upon the court to make the same type of judgment that is required in reviewing Smith's heinousness claim for harmlessness. No authority relied on by Smith supplies support for the proposition that harmless error analysis involves a weighing of factual evidence that this court is not authorized to conduct.
 
 
 75
 Further, we cannot accept Smith's assertion that federal courts do not have the authority to conduct harmless error analysis because the Supreme Court has not specifically instructed a federal court of appeals to conduct such a review as a part of its remand instructions. Importantly, many of the cases on which Smith relies came to the Court on direct review from state courts, not federal habeas courts. See, e.g., Sochor, --- U.S. at ----, 112 S.Ct. 2114; Clemons, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725. While there is no question that state courts may conduct harmless error review, the Supreme Court has often remanded to these courts for "further proceedings" rather than providing them with specific instructions to conduct harmless error analysis. Clemons, 494 U.S. at 755, 110 S.Ct. at 1452; see Sochor, --- U.S. at ----, 112 U.S. at 2123 ("remand ... for proceedings not inconsistent with this opinion"). Similarly, after concluding that a defendant's rights under the Eighth Amendment had been violated by the weighing of an unconstitutionally vague aggravating factor and that this error had not been cured, the Supreme Court has remanded to a federal court of appeals for further proceedings consistent with its opinion, rather than providing specific instructions on remand. See Stringer, --- U.S. at ----, 112 S.Ct. at 1140. Because the Court has followed an identical procedure for state courts, which Smith acknowledges may conduct harmless error review, the failure of the Court to include specific instructions to conduct harmless error analysis on remand to a federal court of appeals does not support Smith's position, particularly since federal habeas courts must not grant relief based on trial errors that were harmless.
 
 
 76
 Smith next points to opinions from two other courts of appeals as supporting his position. In Wiley v. Puckett, 969 F.2d 86, 94 n. 8 (5th Cir.1992), the Fifth Circuit, without analysis, summarily took the position advanced by Smith, relying on the same Supreme Court language. As previously discussed, this language does not control our decision because it does not address the question before our court. In addition, when read in context, the language simply does not support the conclusion that federal habeas courts are not authorized to conduct harmless error review of Smith's heinousness claim. We do not read the second case, Jeffers v. Lewis, 5 F.3d 1199 (9th Cir.1992), as having discussed this issue. Thus, neither of the circuit court opinions relied upon by Smith are particularly persuasive.
 
 
 77
 Finally, the position advanced by Smith means an error that the district court and this court agree was harmless would result in reversal of his sentence. Because the state court did not find the instruction erroneous, it did not, on direct or collateral review, have any occasion to conduct a harmless error analysis. Further, by its own decision, the Supreme Court of North Carolina no longer has jurisdiction to conduct this analysis. The opportunity to conduct harmless error analysis was first presented in federal habeas court, not state court, and we are adequately equipped to conduct it. The result urged by Smith is at odds with the purposes of harmless error analysis in federal habeas review--fostering regard for the criminal judicial process by disregarding errors that have not contributed to the result and granting relief from final state convictions and sentences only to those petitioners who can demonstrate that they have been grievously wronged.
 
 B.
 
 78
 Having concluded that a federal habeas court is required to assess the error committed in Smith's sentencing proceeding for harmlessness prior to granting relief, we now consider the appropriate standard to be applied in making this determination. On direct review a court applies the familiar beyond a reasonable doubt standard set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in assessing the prejudicial impact of an error of constitutional dimension; however, on collateral review in habeas, the reviewing court applies the harmless error standard announced in Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946), to determine whether an error of the trial type is harmless. Brecht v. Abrahamson, --- U.S. ----, ---- - ----, 113 S.Ct. 1710, 1721-22, 123 L.Ed.2d 353 (1993). In holding that the error occasioned by the weighing by a sentencing jury of an unconstitutionally vague aggravating factor in deciding to impose a sentence of death may be assessed for harmless error, the Supreme Court has stated in the context of direct review that this error may be harmless if either: 1) beyond a reasonable doubt the sentence would have been the same had the unconstitutionally vague aggravating circumstance not been injected into the mix, or 2) beyond a reasonable doubt the sentence would have been the same had the factor been defined properly in instructions to the jury. See Clemons, 494 U.S. at 753-54, 110 S.Ct. at 1450-51. Because the Brecht Court clearly held that federal habeas courts are to apply the Kotteakos standard in reviewing errors of the trial type for harmlessness, we believe that habeas relief based on the error occasioned by the weighing of an unconstitutionally vague instruction on an aggravating factor is not appropriate unless the petitioner demonstrates that, viewing the record as a whole, the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Brecht, --- U.S. at ----, 113 S.Ct. at 1722 (quoting Kotteakos, 328 U.S. at 776, 66 S.Ct. at 1253). Accordingly, we apply this standard in assessing the prejudicial impact of the error that occurred in Smith's sentencing proceeding.[13]
 
 C.
 
 79
 In State v. Martin, 303 N.C. 246, 253-55, 278 S.E.2d 214, 219-20, cert. denied, 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981), the Supreme Court of North Carolina addressed the argument that the "especially heinous, atrocious, or cruel" aggravating factor set forth in N.C.Gen.Stat. Sec. 15A-2000(e)(9) is unconstitutionally vague. Relying on a limiting construction applied by the Supreme Court of Florida to an identical Florida provision that had been upheld by the United States Supreme Court in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court of North Carolina upheld the Sec. 15A-2000(e)(9) "especially heinous, atrocious, or cruel" aggravating factor. Martin, 278 S.E.2d at 220. It determined that the factor applied "only in those situations where the evidence showed that the murder was committed in such a way as to amount to a conscienceless or pitiless crime which is unnecessarily torturous to the victim" and "requires ... evidence that the murder in question involved brutality in excess of that which is normally present in any killing." Id.; see also State v. Syriani, 333 N.C. 350, 388-92, 428 S.E.2d 118, 139-41, cert. denied, --- U.S. ----, 114 S.Ct. 392, 126 L.Ed.2d 341 (1993). This limiting construction sufficiently channels the discretion of the sentencing body, supplying the meaningful guidance necessary to avoid constitutional deficiency. See Proffitt, 428 U.S. at 255-56, 96 S.Ct. at 2968; Syriani, 428 S.E.2d at 141.
 
 
 80
 In support of its position that the unconstitutionally vague heinousness instruction did not have a substantial and injurious effect on the verdict reached by the jury, the State argues that if the jury had been properly instructed under the constitutionally limited instruction, it certainly would have concluded that the murder was especially heinous, atrocious, or cruel, and would have decided to impose the death penalty because of the horrendous facts surrounding the murder. Well before Smith raped Collins, he explained to her and her companions that a friend who was to meet him that evening would likely kill the women upon his arrival. After he raped her, Smith forced Collins to remain naked, outside, in below-freezing December temperatures, and when she asked him for clothing or a blanket, he sadistically replied that he could put her out of her misery. The forensic evidence revealed that prior to her death Collins received a brutal beating: there were numerous cuts and bruises on her face and body, particularly around her mouth, nose, and eyes; her tongue was bitten through; one tooth was cracked; her skull was severely fractured in three separate places as a result of blunt trauma to her head; and two of her ribs were broken. From scratches on her back, it appeared that she had been dragged to the quarry pond where Smith attempted to dispose of her body after wedging her feet into a concrete block. When Smith was apprehended near the scene of the crime, he was wet, barefoot, and bloody.
 
 
 81
 Based on our review of the record, we do not hesitate to conclude that had the jury been properly instructed it would have found that Smith's murder of Collins was especially heinous, atrocious, or cruel and would have imposed the death penalty.[14] If anything, the limiting construction adopted by the Supreme Court of North Carolina further compels this conclusion. Clearly, Smith's prolonged physical and psychological torture of Collins, combined with his infliction of an agonizing death, amounted to a "conscienceless or pitiless" crime that was "unnecessarily torturous" to Collins, and "involved brutality in excess of that which is normally present in any killing." Martin, 278 S.E.2d at 220. The overwhelming force of the evidence convinces us that the sentence would have been the same had the jury been properly instructed on the constitutionally limited heinousness instruction. Accordingly, we conclude that the constitutional error that resulted from the jury weighing an unconstitutionally vague heinousness instruction in determining Smith's sentence did not have a substantial and injurious influence in determining the jury's verdict.
 
 IV.
 Smith's Other Arguments
 
 82
 The other issues presented to this court by Smith on cross appeal are also procedurally barred, except for his claims of ineffective assistance of counsel.[15] Smith contends that his appellate counsel rendered ineffective assistance of counsel by failing to raise three significant claims on direct appeal: his heinousness claim, his Caldwell claim, and his cross-examination claim. Assuming that Smith could show that his counsel's actions were unconstitutionally defective, he nevertheless has utterly failed to demonstrate that he was prejudiced as a result. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is not a reasonable probability that the result in Smith's case would have been different except for counsel's errors. Finally, Smith contends that his trial counsel rendered ineffective assistance of counsel by insufficiently investigating and presenting his defense at trial and by insufficiently developing and presenting mitigating evidence at his sentencing hearing. We are not persuaded. We affirm on the reasoning of the district court its holding that counsel's efforts during the pretrial, guilt, and sentencing stages of Smith's trial did not amount to ineffective assistance of counsel. See Smith, 766 F.Supp. at 1387-95; see also State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Dec. 16, 1983).
 
 V.
 Conclusion
 
 83
 Our examination of Smith's habeas petition has been protracted. In the final analysis, however, this appeal calls upon us to apply two elementary and genuinely straightforward directions from the Supreme Court concerning the role a federal habeas court should properly play in reviewing final state court convictions. First, unless a state prisoner can demonstrate cause and prejudice or a fundamental miscarriage of justice, a federal court should not consider issues raised in a habeas petition when a state court declines to grant relief on the basis of an adequate and independent state ground. The Court has explained that in ascertaining whether the state court based its decision on an adequate and independent state ground, federal habeas courts initially should consider whether the state decision fairly appears to rest primarily on federal law or to be interwoven with federal law. There is simply nothing in the state court order at issue here or the circumstances surrounding its entry that could permit this court to conclude that the order fairly appears to rest primarily on federal law; rather the order undoubtedly rested on a state procedural bar. Since Smith cannot establish cause and prejudice or a fundamental miscarriage of justice, we, accordingly, do not consider his procedurally defaulted claims.
 
 
 84
 Nevertheless, were we to do so, we would be required to apply a second equally clear edict--that before a federal habeas court grants relief on an error that is subject to harmless error review, it must be convinced that the error had a substantial and injurious impact on the verdict. The majority of this court, the dissenting members, and the district court that granted Smith relief on the basis of his heinousness claim, all agree that the error was harmless. Hence, habeas relief cannot be afforded to Smith on this basis.
 
 
 85
 Thus, consistent with our understanding of the role a federal habeas court should occupy in reviewing and setting aside final state convictions and in deference to the concerns for comity and federalism that underlie these two guiding principles, we hold that Smith is procedurally barred from asserting each of the issues he has presented to this court[16] except his claims of ineffective assistance of counsel. These latter claims do not furnish a basis for habeas relief. Moreover, even if we were to reach the merits of his defaulted claims, no asserted error can be said to have substantially or injuriously affected the verdict. Consequently, we reverse the judgment of the district court and reinstate Smith's sentence.
 
 
 86
 REVERSED.
 
 
 87
 K.K. HALL, Circuit Judge, concurring in the judgment:
 
 
 88
 I agree with Judge Sprouse that Smith's vagueness claim is not procedurally barred. Accordingly, I concur in Part I of his opinion. However, I agree with Judge Wilkins' analysis and conclusion that giving the instruction was harmless error. I therefore concur in the judgment and in Part III of Judge Wilkins' opinion.
 
 
 89
 I would affirm the district court's judgment with respect to the issues that Smith has raised on cross-appeal, based on the reasoning contained in footnote 15 of Part IV of Judge Wilkins' opinion.
 
 
 90
 I am authorized to state that Judge Hamilton joins in this opinion.
 
 SPROUSE, Senior Circuit Judge, dissenting:
 
 91
 I respectfully dissent.
 
 
 92
 As the majority points out, there is no dispute that the trial court's instruction to the jury, regarding whether the murder was "especially heinous, atrocious or cruel," was unconstitutionally vague. The State, on appeal, urges and the majority holds, however, that Smith's challenge to the constitutional error is procedurally barred under the principles of Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), and Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The majority also agrees with the State that even if consideration of the issue were not procedurally barred in this case, a federal court, faced with the conceded constitutional error, can consider whether the constitutional error was harmless. While I agree with much of the majority's holding, I dissent because, in my view, consideration of the vagueness issue is not procedurally barred and, furthermore, a federal habeas court lacks the power to conduct a harmless error analysis when confronted with a state court's constitutional error in a capital sentencing proceeding.
 
 
 93
 * The standard for determining whether a federal court is procedurally barred from granting habeas relief to remedy a federal constitutional error made at a defendant's state trial is set out in Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), and Coleman v. Thompson, --- U.S. ----, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In Harris, the Supreme Court held that "a procedural default does not bar consideration of a federal claim on ... habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Id. 489 U.S. at 263, 109 S.Ct. at 1043 (quoting Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)).[1]
 
 
 94
 Coleman modified Harris. It held that the Harris presumption (that the state judgment did not rest on independent and adequate state grounds and, therefore, that there is no procedural bar) "applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court had good reason to question whether there is an independent and adequate state ground for the decision." Coleman, --- U.S. at ----, 111 S.Ct. at 2559. But "[i]n the absence of a clear indication that a state court rested its decision on federal law," the claim is procedurally barred. Id.; accord Ylst v. Nunnemaker, --- U.S. ----, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).
 
 
 95
 Thus, resolution of the procedural bar issue rests on a determination of whether the North Carolina Superior Court's denial of Smith's vagueness claim fairly appears to rest primarily on federal law or to be interwoven with federal law (i.e., the merits of his constitutional claims). If so, then the Harris presumption applies, and the claim is not procedurally barred. If not (i.e., if the denial was based on procedural default), the Harris presumption does not apply and the claim is procedurally barred.[2] The rule is easy to state but not always easy to apply, because state court opinions are frequently unclear concerning the basis of their rulings. Coleman, --- U.S. at ----, 111 S.Ct. at 2555. This case is further proof of that problem.
 
 
 96
 The majority has written skillfully and exhaustively to support its holding that the North Carolina trial court based its denial of Smith's "Motion for Appropriate Relief" on North Carolina state procedural grounds. While I admire the tenacious craftsmanship of my colleague's opinion, I cannot agree with either its premise or its conclusion that special circumstances distinguish this case from our holding in Nickerson v. Lee, 971 F.2d 1125 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993).
 
 
 97
 In its order denying Smith's Motion for Appropriate Relief, the North Carolina trial court did not include a plain statement either that its decision rested on procedural grounds or that it rested on the merits. It simply stated: "The court has read the paperwriting and considered the arguments in support of the claims set out therein. The court finds as a fact that Claims No. I, II, III, and IV [including the vagueness challenge], set forth no probable grounds for relief." In my view, proper application of the principles announced in Coleman requires a holding in this case that the North Carolina trial court's ruling was based primarily on federal law or interwoven with federal law. This result is dictated first by the differences in the circumstances surrounding the issuance of the ruling by the Virginia Supreme Court in Coleman and those surrounding the ruling by the North Carolina trial court on Smith's motion. Second, our decision in Nickerson, where the facts resemble this case and closely parallel the differences from Coleman, mandates the conclusion we must reach.
 
 
 98
 In Coleman, the United States Supreme Court concluded that the Virginia Supreme Court's ruling was based on state procedural grounds. It determined that the Virginia court's order dismissing the defendant's late notice of appeal was grounded on independent state law, even though the order lacked a plain statement of the reason for the dismissal, because the surrounding circumstances supported that conclusion. Coleman, --- U.S. at ----, 111 S.Ct. at 2561. In Coleman, the Virginia Supreme Court clearly granted the Commonwealth's motion to dismiss on procedural grounds: "That motion was based solely on Coleman's failure to meet the Supreme Court's time requirements.... Coleman concedes that the Virginia Supreme Court dismissed his habeas corpus appeal as untimely, applying a state procedural rule." Id. --- U.S. at ----, 111 S.Ct. at 2551. In that situation, the only issue was timeliness--purely a state procedural issue. As we recognized in Nickerson, "the Commonwealth had filed a motion to dismiss on the grounds of procedural default. Therefore, when the court granted Virginia's motion to dismiss, it was apparent that the court's judgment rested on independent and adequate state grounds." Nickerson, 971 F.2d at 1129.
 
 
 99
 In Nickerson, a panel of this court reviewed a vague North Carolina trial court's order denying a defendant's motion, which was similar to Smith's motion for appropriate relief under N.C.Gen.Stat. Sec. 15A-1419 (1988) in this case. That order, which was issued by the Person County Superior Court, read as follows:
 
 
 100
 This cause coming on to be heard before the undersigned Judge presiding in the Person County Courthouse on January 3, 1990, pursuant to the petitioner's Motion for Appropriate Relief which was filed in the office of the Person County Clerk of Superior Court on September 8, 1989, the Court upon review of the motion and the file in the case finds that the petitioner has set forth no grounds for which he is entitled to a motion for appropriate relief.
 
 
 101
 The Court further finds that the petitioner has previously had a motion for appropriate relief denied on July 15, 1986, by the Honorable Henry W. Hight, Jr., and that the petitioner has taken his case on appeal to the North Carolina Supreme Court. The North Carolina Supreme Court found "no error" in the petitioner's trial.
 
 
 102
 WHEREFORE, IT IS ORDERED BY THE COURT that the petitioner's Motion for Appropriate Relief is denied and dismissed.
 
 
 103
 Nickerson, 971 F.2d at 1128.
 
 
 104
 In finding erroneous the federal habeas court's holding that the defendant's federal habeas claim was procedurally barred, Judge Luttig, writing for the panel, said:
 
 
 105
 [I]t appears that the motion could have been denied on the ground of procedural default. We do not believe, however, that it was denied on this alternative ground. Cf. Caldwell v. Mississippi, [472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985) ] ("The mere existence of a basis for a state procedural bar does not deprive this Court of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case").
 
 
 106
 Id. Judge Luttig went on to explain why the circumstances surrounding the issuance of the order failed to indicate that the ruling was based on state procedural grounds and how the Nickerson circumstances differed from those in Coleman:
 
 
 107
 The first paragraph of the order states the court's conclusion, ... that Nickerson "has set forth no grounds for which he is entitled to ... relief." J.A. at 265. This paragraph implies that the court reached and reviewed the merits of each of Nickerson's claims and concluded that he would not be entitled to relief on any of these claims....
 
 
 108
 The court neither mentions procedural default (or any synonymous term) nor cites any relevant North Carolina statutory or decisional law. It does not even note that the claims raised by Nickerson in the underlying motion had not been raised in his previous direct and collateral appeals.
 
 
 109
 Id. at 1128-29.
 
 
 110
 The "finding" language by the trial court in this case is almost identical to that in Nickerson. In Nickerson, the state court found that Nickerson had "set forth no ground for which he is entitled to ... relief." Id. In Smith, the state court found "as a fact that claims 1, 2, 3, and 4 set forth no probable grounds for relief." In Nickerson, we held that this language "implies that the court reached and reviewed the merits of each of Nickerson's claims and concluded that he would not be entitled to relief on any of these claims." Id. at 1129. The Nickerson court found it significant that the state court neither mentioned procedural default, recited relevant North Carolina law, nor even noted that Nickerson's claims had been raised in the previous appeal. Id. The state trial court's order denying Smith's motion in this case is characterized by these same negative factors indicating that Smith's motion was not turned down for state procedural grounds. In fact, in this case, as in Nickerson, North Carolina did not respond in state court to the Motion for Appropriate Relief. It is difficult to imagine more parallel decisive circumstances.
 
 
 111
 The majority, in my view, understates the controlling force of Nickerson and overstates or mischaracterizes the circumstances which it believes bring the state court's action on the motion in Smith within the ambit of the Supreme Court's ruling in Coleman. In my view, these suggested distinctions are evanescent.
 
 
 112
 The majority first postulates that section 15A-1419(a)[3] is mandatory and that since all of the issues raised by Smith were raised or could have been raised on appeal, the state court was required to deny his motion based on either section 15A-1419(a)(2) or (a)(3). The majority thus concludes that North Carolina trial courts, in considering Smith's motion under section 15A-1419, could not have considered any of the grounds advanced in the motion on the merits. This might be at least an arguable interpretation of the statute, lacking any previous North Carolina interpretation. The problem with that argument is, however, that the North Carolina Supreme Court has spoken on the issue.
 
 
 113
 In State v. Price, 331 N.C. 620, 418 S.E.2d 169 (1992), vacated on other grounds, --- U.S. ----, 113 S.Ct. 955, 122 L.Ed.2d 113 (1993), the North Carolina Supreme Court considered a defendant's arguments based on section 15A-1419 and, considering them on the merits, found them unpersuasive. It stated:
 
 
 114
 [T]he arguments now raised by the defendant in the motion for appropriate relief could have been raised in his original appeal. Therefore, defendant's motion for appropriate relief is subject to being dismissed.
 
 
 115
 We have nevertheless elected to review defendant's contentions raised in his motion for appropriate relief in the interests of both judicial economy and thorough scrutiny of this capital case. "[I]t is the uniform practice of this Court in every case in which a death sentence has been pronounced to examine and review the record with minute care to the end it may affirmatively appear that all proper safeguards have been vouchsafed the unfortunate accused before his life is taken by the State."
 
 
 116
 Id. 418 S.E.2d at 174-75 (quoting State v. Fowler, 270 N.C. 468, 469, 155 S.E.2d 83, 84 (1967)). In other words, the North Carolina Supreme Court stated that it frequently considers the merits of contentions raised on section 15A-1419(a) motions. In Price, as here, some of those contentions were federal constitutional claims.
 
 
 117
 In contrast to the majority, I do not read the Price opinion as one relying on section 15A-1419(b). While it is true that the defendant "noted" the provisions of section 15A-1419(b), the North Carolina Supreme Court did not discuss section 15A-1419(b), nor did it mention good cause. In its consideration of the merits of Price's claims, the court reviewed the case in order to further judicial economy and in light of the thorough and appropriate scrutiny to be given to "this capital case." The North Carolina Supreme Court also announced its practice as one utilized in every death sentence case. Id. 418 S.E.2d at 175.
 
 
 118
 Similarly (and in contrast to the view of the majority), section 15A-1420(c)(1) sheds no light on the question of whether the state trial court considered the merits of Smith's federal constitutional arguments. That provision merely requires a hearing unless a movant's arguments are completely without merit. A reviewing court can certainly consider an issue "on the merits" and decide, without a hearing, that it is meritless. Presumably on this rationale, the state court in Nickerson denied the defendant's motion.
 
 
 119
 Of the forty-three grounds that Smith raised in claims 1 through 4 of his motion for appropriate relief, nine of them raised nonconstitutional issues that had been raised on direct appeal.[4] The majority concludes that the North Carolina Supreme Court's consideration of the nine claimed nonconstitutional errors is a circumstance indicating that in dismissing Smith's motion for appropriate relief, the trial court could not have considered the claims of constitutional error not raised on appeal. In my opinion, and in light of Price, that conclusion is simply not deducible from a plain reading of section 15A-1419.
 
 
 120
 The majority, continuing its discussion of the circumstances differentiating the court's action in this case from that in Nickerson, relies on the fact that the state trial court drew no distinction between those issues it was required to deny under section 15A-1419(a)(2), because they had previously been decided by the Supreme Court in North Carolina, and those subject to denial under section 15A-1419(a)(3), because they could have been, but were not, raised in Smith's direct appeal. It emphasizes that the trial court denied all of the claims with the same three sentences. I submit that this circumstance does not support the majority's thesis, but that, instead, it supports a finding that the state trial court did not act upon state procedural grounds. As the Nickerson court said, "The court neither mentions procedural default (or any synonymous term) nor cites any relevant North Carolina statutory or decisional law. It does not even note that the claims raised by Nickerson in the underlying motion had not been raised in his previous direct and collateral appeals." Nickerson, 971 F.2d at 1129.
 
 
 121
 Also not probative on the principal issue is the different treatment afforded claims 1 through 4 as contrasted to claim 5, i.e., a determination of claims 1 through 4 without a hearing and a determination of the issue in claim 5 only after a fairly extensive hearing. A simple explanation for this is that all of the facts needed for the trial court's decision concerning claims 1 through 4 were already in the record, whereas claims of ineffective assistance of counsel of the type involved in claim 5, almost without exception, require a record developed by a separate hearing.
 
 
 122
 For these reasons, I am convinced that the procedural default issue here is controlled squarely by Nickerson. The same circumstances that distinguished Nickerson from Coleman exist here. There is some ambiguity in all three cases, but in Coleman, the motion was based solely on timeliness, a state procedural ground, and was granted in that context.
 
 
 123
 There is no doubt that the Virginia Supreme Court's "consideration" of all filed papers adds some ambiguity, but we simply cannot read it as overriding the court's explicit grant of a dismissal motion based solely on procedural grounds. Those grounds are independent of federal law.
 
 
 124
 Coleman, --- U.S. at ----, 111 S.Ct. at 2561.
 
 
 125
 In contrast, here, as in Nickerson, not only was there no procedural motion, there was no response to the defendant's motion for relief on the merits. The state, knowing that the motion was for relief on the merits, failed to respond. The circumstances that resolved the ambiguity in Coleman quite simply are not present here. While it is true that the Coleman court declined to require a state court to explicitly state that its decisions rest on state procedural grounds, it emphasized its belief that state courts should and would do so. In the absence of any such indication, it would be improper to decline review in this case based on the existence of an adequate and independent state ground.
 
 II
 
 126
 I also disagree with the conclusion of the majority that federal habeas courts in cases like this one may undertake dispositive harmless error analysis. It is true, as the majority notes, that in Clemons v. Mississippi, 494 U.S. 738, 752, 110 S.Ct. 1441, 1450, 108 L.Ed.2d 725 (1990), and Satterwhite v. Texas, 486 U.S. 249, 258, 108 S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988), the Supreme Court held that a harmless error analysis in the sentencing phase of death penalty cases is appropriate. Clemons, however, was before the Court on direct review and said only that the Mississippi Supreme Court could conduct a harmless error analysis in reviewing a capital sentence issued in that state's courts. Satterwhite was likewise before the Court on direct review. The Court, therefore, did not address whether a district court, in considering a petition for a writ of habeas corpus, had the power to conduct harmless error analysis of a state sentencing proceeding.[5]
 
 
 127
 Nor do the holdings in Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), and Cabana v. Bullock, 474 U.S. 376, 391 n. 6, 106 S.Ct. 689, 700 n. 6, 88 L.Ed.2d 704 (1986), cited by the majority shed any light on our inquiry. These cases certainly demonstrate that a federal habeas court may conduct harmless error analysis in phases of state capital murder trials that do not implicate procedures used to determine how some defendants are selected for the death penalty while others escape it. An entire division of Eighth Amendment jurisprudence, however, has been devoted to establishing the difference between reviewing the procedures by which defendants are singled out for the death penalty and reviewing other criminal proceedings, including sentencing and nonsentencing phases of capital murder cases.
 
 
 128
 Since Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the United States Supreme Court has made it clear that states may impose the death sentence only if they shape their laws to assure that some guilty capital murder defendants are not separated from others such that the death sentence is imposed on a few guilty defendants in an arbitrary manner. That principle, discussed generally in Furman, was expressly articulated in Godfrey v. Georgia, where a plurality of the Court decreed:
 
 
 129
 A capital sentencing scheme must, in short, provide a "meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not."
 
 
 130
 Godfrey v. Georgia, 446 U.S. 420, 427-28, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (quoting Gregg v. Georgia, 428 U.S. 153, 188, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). The plurality went on to say:
 
 
 131
 This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates "standardless [sentencing] discretion." Gregg v. Georgia, supra, [428 U.S.] at 196, n. 47 [96 S.Ct. at 2936 n. 47]. See also Proffitt v. Florida, 428 U.S. 242 [96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) ]; Jurek v. Texas, 428 U.S. 262 [96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) ]. It must channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance," and that "make rationally reviewable the process for imposing a sentence of death."
 
 
 132
 Godfrey 446 U.S. at 428, 100 S.Ct. at 1764-65 (footnotes omitted).
 
 
 133
 While the language in Godfrey reflected the views of three justices, two years before, a majority of the Court, in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), considered the constitutionality of the Ohio death sentencing procedures and expressed the need to implement special safeguards in capital sentencing proceedings: "Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases." Id. at 605, 98 S.Ct. at 2965. The Court reiterated this position in Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982):
 
 
 134
 By requiring that the sentencer be permitted to focus "on the characteristics of the person who committed the crime," Gregg v. Georgia, supra, [428 U.S.] at 197 [96 S.Ct. at 2936], the rule in Lockett recognizes that "justice ... requires ... that there be taken into account the circumstances of the offense together with the character and propensities of the offender." Pennsylvania v. Ashe, 302 U.S. 51, 55 [58 S.Ct. 59, 61, 82 L.Ed. 43] (1937).
 
 
 135
 Eddings, 455 U.S. at 112, 102 S.Ct. at 875 (emphasis supplied).
 
 
 136
 In Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court again reviewed Georgia's sentencing scheme to determine whether it satisfied the edicts set forth in the above cases. It described the role played by a state court in narrowing the class of capital defendants who can be sentenced to death and stated:
 
 
 137
 This conclusion [the Gregg court's approval of the Georgia sentencing scheme] rested, of course, on the fundamental requirement that each statutory aggravating circumstance must satisfy a constitutional standard derived from the principles of Furman itself. For a system "could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in Furman could occur." To avoid this constitutional flaw, an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder....
 
 
 138
 What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.
 
 
 139
 Zant at 876-77, 879, 103 S.Ct. at 2742, 2744 (emphasis supplied) (citations and footnotes omitted).
 
 
 140
 Two things are abundantly clear from these cases: (1) the Eighth Amendment imposes an underlying requirement on states to individualize capital sentencing proceedings to eliminate arbitrary imposition of the death penalty and (2) state capital sentencing procedures, so long as they comply with the Eighth Amendment, are grounded on state law and are the responsibilities of states. In its review of state capital sentencing schemes, the Supreme Court has left to the states the development of specific procedures and rules that will guide each state's capital sentencing scheme so long as there is compliance with the requirements of Furman and its progeny.
 
 
 141
 For example, the Supreme Court in Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), held that the statutory aggravating circumstances of "especially heinous, atrocious, or cruel" was unconstitutionally vague. In Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), however, the Court held that a state appellate court could cure the unconstitutional vagueness by reweighing factors in a way that would satisfy the requirements of individualized consideration in selecting defendants of that class for the death penalty. The Court thus recognized that a state may have a number of avenues by which it can fulfill its responsibilities to "tailor and apply its laws in a manner that avoid the arbitrary and capricious infliction of the death penalty which 'obviates standardless sentencing discretion.' " Godfrey, 446 U.S. at 428, 100 S.Ct. at 1764 (quoting Gregg v. Georgia, 428 U.S. at 196 n. 47, 96 S.Ct. at 2936 n. 47). The Court's holding was obviously restricted to the discrete spectrum of death sentencing selection criteria in capital cases.[6]
 
 
 142
 In considering harmless error analysis in this discrete area of Eighth Amendment law, a state court would be using another tool, recognized by the United States Supreme Court, to reshape its sentencing laws so as to bring them in line with the federal Constitution. Federal habeas courts can only review harmless error analyses to determine if they do, in reality, bring the state's sentencing scheme in line with the federal Constitution.
 
 
 143
 Against this background, the Court decided Stringer v. Black, --- U.S. ----, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992); Sochor v. Florida, --- U.S. ----, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992); and Richmond v. Lewis, --- U.S. ----, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). These decisions, in my view, demonstrate the underlying principle that a state court, conducting a harmless error analysis in the sentencing phase of capital cases, is performing a different function from that of a federal court conducting a straightforward constitutional harmless error analysis. Broadly stated, whether a capital sentence would have been imposed absent the constitutional error requires an interpretation of state law, and development of that law should be left to the states.
 
 
 144
 In Stringer v. Black, --- U.S. ----, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Supreme Court reviewed a habeas judgment rendered by a federal district court. The habeas court had considered the petition of a Mississippi defendant sentenced to death for committing a double murder during a robbery. Killing in the course of a robbery was included in the definition of capital murder, for which a jury could impose a death sentence after finding at least one of eight statutory aggravating factors which were not outweighed by mitigating circumstances. One of the aggravating factors found by the jury was "that the capital murder was especially heinous, atrocious, or cruel," and the trial court's instruction did not further define the meaning of that factor. The district court denied the petitioner's habeas claim, and the Fifth Circuit affirmed.
 
 
 145
 In reversing, the Supreme Court discussed the role of state appellate courts in capital cases and said:
 
 
 146
 [W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.
 
 
 147
 Id. --- U.S. at ----, 112 S.Ct. at 1137 (emphasis supplied).
 
 
 148
 In the same opinion, the Supreme Court indicated that the Fifth Circuit should not have ignored the Mississippi Supreme Court's characterization of its law and indicated its deference to state courts in applying their sentencing laws and procedures by stating: "What is dispositive is the fact that the Mississippi Supreme Court, which is the final authority on the meaning of Mississippi law, has at all times viewed its sentencing scheme as one in which aggravating factors are critical in the jury's determination whether to impose the death penalty." Id. --- U.S. at ----, 112 S.Ct. at 1139 (emphasis supplied).
 
 
 149
 While the preceding statement does not directly address the issue in this case, the Court's treatment of the merits in Stringer commands the result we adopt. In recognizing the role of Mississippi's courts, the Supreme Court stated: "It will be a strange rule of federalism that ignores the view of the highest court of a state as to the meaning of its own law." Id. Thus, the Supreme Court recognized the necessity of allowing state courts to develop state law.
 
 
 150
 Later that term, in Sochor v. Florida, --- U.S. ----, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), the Supreme Court considered a case in which the trial judge had relied in part on a "coldness" factor in sentencing the defendant to death. The Florida Supreme Court had held that even though that factor was unconstitutionally vague, the other factors properly considered were sufficient to make the sentence constitutionally valid. On direct review, the United States Supreme Court reversed, reasoning:
 
 
 151
 While federal law does not require the state appellate court to remand for resentencing, [the state] must, short of remand, either itself reweigh without the invalid aggravating factor or determine that weighing the invalid factor was harmless error.
 
 
 152
 Id. --- U.S. at ----, 112 S.Ct. at 2116 (emphasis supplied). Sochor thus teaches that while the Constitution requires individualized sentencing determinations in capital cases, states which seek to apply the death penalty bear the responsibility of shaping their laws so as to comply with the Eighth Amendment.
 
 
 153
 Finally, in Richmond v. Lewis, --- U.S. ----, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), before the Court on review of a federal district court's denial of habeas relief, a divided Supreme Court of Arizona had affirmed a death sentence reached after application of aggravating factors, but the Arizona justices differed as to their individual reasons for affirmance. The United States Supreme Court, in remanding the case, repeated the Stringer language and said:
 
 
 154
 [N]or can a court "cure" the error without deciding itself that the valid aggravating factors are weightier than the mitigating factors. "Only constitutional harmless error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence."
 
 
 155
 Id. --- U.S. at ----, 113 S.Ct. at 535 (emphasis supplied). The Richmond court then went on to specify who should perform such a constitutional analysis:
 
 
 156
 Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand.
 
 
 157
 Id. (emphasis supplied). Importantly, the Court remanded to the district court to grant the writ unless the State of Arizona corrected the unconstitutional failure to perform a sentencing calculus without the invalid factor.
 
 
 158
 It is also important to note that the Stringer/Sochor/ Richmond line of cases does not represent a departure from established Supreme Court precedent. In Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), the Supreme Court laid out the distinct roles played by federal and state courts in this area. In that case, the Court reviewed a death sentence imposed under a Florida statute which required the state trial court, in imposing the sentence, to set forth in writing its findings concerning the aggravating and mitigating circumstances. The statute also provided for automatic review by the Supreme Court of Florida but did not limit this review to any specific form. This statute had been found constitutional in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), and the Florida Supreme Court has complemented its meaning with a number of decisions. In Barclay, although the trial judge had considered improper aggravating circumstances, the United States Supreme Court held that the Florida Supreme Court had properly narrowed the overly broad application of the heinousness instruction by the state trial court. The plurality first noted that whether the sentence should be vacated hinged on interpretation of Florida law. Id. 463 U.S. at 951, 103 S.Ct. at 3425. Second, then-Justice Rehnquist stated that the Florida Supreme Court's manner of reviewing constitutional errors at the trial level brings Florida law within the requirements of the Eighth Amendment:
 
 
 159
 [T]he Florida Supreme Court does not apply its harmless error analysis in an automatic or mechanical fashion, but rather upholds death sentences on the basis of this analysis only when it actually finds that the error is harmless. There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance. "What is important ... is an individualized determination on the basis of the character of the individual and the circumstances of the crime."
 
 
 160
 Barclay, 463 U.S. at 958, 103 S.Ct. at 3429 (quoting Zant 462 U.S. at 879, 103 S.Ct. at 2744 (emphasis in original)).
 
 
 161
 The Barclay plurality steadfastly refused to delve into an interpretation of the particularities of Florida's capital sentencing law. The defendant had raised questions about the Florida Supreme Court's interpretation of its cases on aggravating factors. The plurality responded: "The obvious answer to this question ... is that mere errors of state law are not the concern of this Court, unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." Id. 463 U.S. at 957-58, 103 S.Ct. at 3429. The question here is whether, under state law, inclusion of the invalid aggravating factor was harmless error.
 
 
 162
 The Stringer/ Richmond line of cases requires individualized sentencing procedures but leaves implementation of those procedures to state courts. As the Supreme Court stated in Richmond: "Where the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, the state appellate court or some other state sentencer must actually perform a new sentencing calculus, if the sentence is to stand." Richmond, --- U.S. at ----, 113 S.Ct. at 535 (emphasis supplied). No amount of grammatical parsing alters the clear instruction that the required harmless error analysis must be conducted in the state judicial system.[7]
 
 
 163
 While the Supreme Court has never been directly confronted with the issue presented in this case, it has, in cases starting with Furman v. Georgia, defined as a basic constitutional principle a state's responsibility for individualizing sentencing determinations in death penalty cases, and it has enunciated the principles of how this must be achieved:
 
 
 164
 [I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates "standardless [sentencing] discretion."
 
 
 165
 Godfrey, 446 U.S. at 427-28, 100 S.Ct. at 1764 (citations and footnotes omitted).
 
 
 166
 Thus, when the Supreme Court in Stringer, Sochor, and Richmond added state harmless error analysis to the corrective formulations of Furman 's progenies, it merely approved one more avenue by which a state judicial system could satisfy the state's obligation to tailor and apply its laws in a constitutional manner. A federal court, under principles of constitutional federalism, may not intrude or even assist in that function. It may not perform those tasks for a state system any more than it could rewrite state legislation in order to shape it to fit it to the federal Constitution.
 
 
 
 [1]
 This order stated in pertinent part:
 This matter was heard on a paperwriting entitled "Motion for Appropriate Relief" filed June 6, 1983....
 The court has read the paperwriting and considered the arguments in support of the claims set out therein. The court finds as a fact that the Claims No. I, II, III and IV, set forth no probable grounds for relief.
 It is concluded that the matters alleged in Claims No. V constitute a sufficient showing to require a plenary hearing....
 NOW THEREFORE, IT IS ORDERED THAT:
 
 
 [1]
 Claims No. I, II, III and IV are denied
 
 
 [2]
 A plenary hearing in Claims No. V is to be held
 ....
 
 
 [4]
 The District Attorney shall file an answer to Claims No. V within twenty (20) days
 State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. Aug. 19, 1983).
 
 
 [2]
 Smith then filed a second motion for appropriate relief in North Carolina Superior Court. This motion raised ineffectiveness of counsel in conceding Smith's guilt at trial and in admitting to the existence of certain aggravating circumstances. The superior court denied the motion, State v. Smith, Nos. 80 CRS 15265, 15266, 15271 (N.C.Super.Ct. March 9, 1987), and the Supreme Court of North Carolina denied certiorari, State v. Smith, 364 S.E.2d 668 (N.C.1988), as did the United States Supreme Court, Smith v. North Carolina, 485 U.S. 1030, 108 S.Ct. 1589, 99 L.Ed.2d 903 (1988)
 
 
 [3]
 As discussed at length below, the district court improperly focused on the necessity of a plain statement to prevent application of the Harris presumption and ignored the predicate requirement in Harris that the state opinion fairly appear to rest primarily on federal law or to be interwoven with federal law
 
 
 [4]
 Because the Supreme Court of North Carolina denied Smith's petition for certiorari from the denial of his first motion for appropriate relief, the superior court decision is the last state court to which Smith presented his federal claims for purposes of determining whether the Harris presumption applies. Felton v. Barnett, 912 F.2d 92, 94-95 (4th Cir.1990) (Order of superior court adjudicating motion for appropriate relief, not summary denial of certiorari by Supreme Court of North Carolina, is the "last state court judgment" for purposes of Harris), cert. denied, 498 U.S. 1032, 111 S.Ct. 693, 112 L.Ed.2d 683 (1991)
 
 
 [5]
 Smith did contend in Claim V of his 1983 motion that his appellate counsel was ineffective in failing to raise the heinousness claim on direct appeal. While ineffective assistance of counsel may constitute good cause to excuse the failure to raise a claim on direct appeal, cf. State v. McKenzie, 46 N.C.App. 34, 38, 264 S.E.2d 391, 395 (1980) (implying that ineffective assistance of counsel might warrant addressing grounds that would otherwise be procedurally defaulted under Sec. 15A-1419(a)), we cannot conclude that the superior court that adjudicated Claims I through IV of Smith's 1983 motion would have viewed it as such inasmuch as the merits of the ineffective assistance of counsel claim had yet to be considered when it denied relief on Claims I through IV. In addition, Smith's claims of ineffective assistance of counsel were eventually addressed fully on the merits and rejected by the superior court, as well as the district court and this court
 
 
 [6]
 Section 15A-1420(c)(1), governing the circumstances under which a superior court must conduct a hearing on a motion for appropriate relief, provides in pertinent part:
 Any party is entitled to a hearing on questions of law or fact arising from the motion [for appropriate relief] and any supporting or opposing information presented unless the court determines that the motion is without merit.
 
 
 [7]
 We acknowledge that State v. Holden, 106 N.C.App. 244, 248, 416 S.E.2d 415, 418, disc. rev. denied, 332 N.C. 669, 424 S.E.2d 413 (1992), appears to announce a different rule. We believe, however, that Holden is subject to misinterpretation because the court misquoted the statute upon which it was relying. A plain reading of Holden appears to stand in direct contravention with Sec. 15A-1420(c)(1) and prior interpretations of that statute by the Supreme Court of North Carolina. See, e.g., State v. Bush, 307 N.C. 152, 165, 297 S.E.2d 563, 572 (1982). Therefore, it appears to us that it is most likely that the Holden court meant that an evidentiary hearing was not required for a motion presenting only a question of law--a result consistent with prior precedent and Sec. 15A-1420(c)
 
 
 [8]
 Smith asserts that another factor, the Sec. 15A-1420(c) requirement--that the superior court conduct an evidentiary hearing on motions for appropriate relief raising issues that require the resolution of questions of fact--accounts for the disparate treatment received by these two sets of claims. While we recognize that disposition of the ineffective assistance of counsel arguments raised in Claim V required an evidentiary hearing, this factor does not fully account for the disparate treatment the two sets of claims received. As discussed at length above, the superior court was required by Sec. 15A-1420(c) to conduct a hearing in order to reach the merits of a motion for appropriate relief under Sec. 15A-1419(b); thus, the fact that the superior court conducted a hearing on Claim V serves to highlight, rather than explain the disparate treatment. Additionally, the fact that an evidentiary hearing was required for the issues raised by Smith in Claim V does not account for the failure of the superior court to request a response from the State to Claims I through IV and does not account for the fact that the superior court disposed of 43 issues in a three-sentence order
 
 
 [9]
 Our opinion in Nickerson v. Lee, 971 F.2d 1125 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993), is distinguishable in this respect. The Nickerson court reviewed an order of a superior court in North Carolina denying a motion for appropriate relief that contained language virtually identical in significant respects to the summary order denying Smith's Claims I through IV. See id. at 1128. A panel of this court concluded that language in the state order providing that Nickerson had " 'set forth no grounds for which he is entitled to ... relief' " implied that the state "court reached and reviewed the merits of" the issues raised. Id. at 1128-29. The Nickerson court, however, was careful to distinguish Coleman and other cases that had decided, based on surrounding circumstances, that ambiguous state orders fairly appeared to rest on state, rather than federal, law. Id. at 1129 & n. 5. Determining that none of the circumstances surrounding entry of the order at issue indicated that the state court had based its decision on the state procedural rule, see id. at 1129, the Nickerson court concluded that the judgment of the state court "did not rest upon an independent and adequate state ground," id. at 1130. Here the surrounding circumstances, as discussed at length above, indicate that the superior court relied on Sec. 15A-1419(a). Moreover, the State did not present to the Nickerson panel many of the grounds that support the conclusion that the superior court order did not fairly appear to rest principally on federal grounds. In any event--and contrary to the position apparently taken by the dissent--the Nickerson opinion, like all other panel opinions, is not binding precedent controlling a decision of this en banc court
 
 
 [10]
 The only case to which Smith can point for support for his position that the Supreme Court of North Carolina will reach the merits on collateral review of issues that a petitioner could have raised, but failed to raise, on direct appeal is State v. Price, 331 N.C. 620, 628-31, 418 S.E.2d 169, 174-75 (1992), vacated, --- U.S. ----, 113 S.Ct. 955, 122 L.Ed.2d 113 (1993). Aside from the fact that the decision in Price was vacated by the Supreme Court, it does not sustain his argument. In Price, the Supreme Court of North Carolina determined that arguments made in a petitioner's motion for appropriate relief that could have been raised in the original appeal were defaulted under Sec. 15A-1419(a), but it elected to review these additional arguments relying on Sec. 15A-1419(b). Id. Noting that the petitioner's direct appeal was then still pending before it following a remand from the United States Supreme Court, the Supreme Court of North Carolina relied on its well-established rule, that in its direct review of capital cases it will consider all errors, in reaching its decision to hear the arguments raised in the motion for appropriate relief under the Sec. 15A-1419(b) exception. See id. Because the Supreme Court of North Carolina relied on the fact that the petitioner's direct appeal was still pending, Price does not sustain the proposition that procedural bars are not consistently applied in collateral review of capital cases
 
 
 [11]
 Smith also relies on Richardson v. Turner, 716 F.2d 1059, 1062 (4th Cir.1983), in which this court remanded to permit a habeas petitioner to exhaust a previously unexhausted claim. Although the claim had not been raised in a prior appeal and would therefore have been subject to the procedural bar provision of Sec. 15A-1419(a), we were unable to find that exhaustion necessarily would have been futile based on the exception contained in Sec. 15A-1419(b). Id. Merely because the state court may choose in a given case to review a claim in the interest of justice, however, does not mean that the procedural bar is not consistently applied. Cf. Meadows, 904 F.2d at 907
 
 
 [12]
 The Court has left open the possibility that in "an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict." Brecht, --- U.S. at ---- n. 9, 113 S.Ct. at 1722 n. 9
 
 
 [13]
 Although we apply the Kotteakos standard, our decision would be the same were we to apply the Chapman harmless error standard. We are convinced beyond a reasonable doubt that Smith's sentence would have been the same had the state trial court instructed the jury on the constitutionally limited heinousness factor
 
 
 [14]
 Because we conclude that the vague heinousness instruction did not substantially affect the jury's decision that Collins' murder was especially heinous, atrocious, or cruel or its decision to impose the death penalty, it is unnecessary to address whether the vague heinousness instruction would have had a substantial effect on the sentence based on the other aggravating factors without consideration of the heinousness factor
 
 
 [15]
 As with Smith's heinousness claim, we conclude that Smith would not be entitled to habeas relief even if we addressed the merits of the claims Smith raises on cross appeal. His argument that there is a reasonable likelihood that one or more of the jurors mistakenly believed that they could, in weighing mitigating evidence, consider only the evidence that the jury unanimously agreed was mitigating in violation of the principles announced in McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990), lacks merit. Smith concedes that the sentencing form presented to the jury that sentenced him did not require unanimity for consideration of mitigating circumstances as had the one at issue in McKoy and the sentencing instructions given to the jury did not include a general unanimity instruction. The trial court instructed the jury that it must vote unanimously on Issue One (the presence of aggravating circumstances); Issue Three (whether aggravating circumstances outweighed mitigating circumstances), and Issue Four (whether the aggravating circumstances were severe enough to warrant imposition of the death penalty). The jury was not instructed that it must vote unanimously on Issue Two (the presence of mitigating factors). The court explained to the jury each of five potential mitigating circumstances and instructed the jurors that they were to write "Yes" on the verdict form beside each mitigating circumstance "for which the defendant has satisfied you" of its existence. On Issue Three, the court instructed, "The question is whether ... the weight of the circumstances you find to exist, as to whether those which are aggravating outweigh in your minds the mitigating circumstances." With respect to Issue Four, the court charged the jurors to "weigh all the circumstances that you have found, if any, to be aggravating, those that you've found to be mitigating, and determine whether you find from the evidence and beyond a reasonable doubt that the aggravating circumstances found by you are ... sufficiently important, to call for the imposition of the death penalty." The court did not instruct the jury that it must find the existence of the mitigating circumstances only by unanimous vote; nor can we conclude that the sentencing arguments of counsel were misleading. Accordingly, we conclude that Smith's sentencing hearing was not tainted with McKoy error
 Smith's remaining claims also lack merit. He argues that the trial court violated Caldwell v. Mississippi, 472 U.S. 320, 328-29, 105 S.Ct. 2633, 2639-40, 86 L.Ed.2d 231 (1985), when it referred to the jury's decision on whether to impose the death penalty as a "recommendation." As the district court correctly ruled, Caldwell does not apply retroactively because it created a new rule under Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). See Sawyer v. Smith, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990). Next, Smith asserts that the trial court's refusal to permit Smith's attorney to pose a hypothetical question to a pathologist testifying as a State witness violated his Sixth Amendment right to cross-examination; however, Smith has failed to demonstrate that any error occasioned by the trial court's refusal was harmful to him in view of the fact that Smith's attorney was able to elicit all of the information sought in the hypothetical in additional questioning of the witness.
 
 
 [16]
 The position expressed concerning the procedural bar issue failed to gain a majority of the votes of the en banc court because the vote was evenly split
 
 
 [1]
 Although the North Carolina Supreme Court denied certiorari following the Superior Court's decision on Smith's motion, the Fourth Circuit has held that the last state court judgment for Harris purposes is the Superior Court's denial of the Motion for Appropriate Relief, not the North Carolina Supreme Court's denial of certiorari. Felton v. Barnett, 912 F.2d 92, 95-96 (4th Cir.1990), cert. denied, 498 U.S. 1032, 111 S.Ct. 693, 112 L.Ed.2d 683 (1991)
 
 
 [2]
 It is barred unless Smith "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Coleman, --- U.S. at ----, 111 S.Ct. at 2565. Since, in my view, the issue was not procedurally barred, it is not necessary to address this prong of the rule
 
 
 [3]
 Section 15A-1419 provides:
 (a) The following are grounds for the denial of a motion for appropriate relief:
 (1) Upon a previous motion made pursuant to this Article, the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so. This subdivision does not apply to a motion based upon deprivation of the right to counsel at trial or upon failure of the trial court to advise the defendant of such right. This subsection does not apply when the previous motion was made within 10 days after entry of judgment.
 (2) The ground or issue underlying the motion was previously determined on the merits upon an appeal from the judgment or upon a previous motion or proceeding in the courts of this State or a federal court, unless since the time of such previous determination there has been a retroactively effective change in the law controlling such issue.
 (3) Upon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so.
 (b) Although the court may deny the motion under any of the circumstances specified in this section, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious.
 
 
 [4]
 Those nine are: summary denial of defendant's jury selection motions; refusal to sequester the jury during trial; failure to rule upon the motion to sequester the witnesses; misstatement of defendant's contentions; failure to instruct on the defense of accident and on lesser included offenses; erroneous sentencing instructions at voir dire; lack of evidentiary support for jury's findings of aggravating circumstances; failure to peremptorily instruct that defendant's capacity was impaired; and court's mandatory death instruction
 Issues that were raised in Smith's motion for appropriate relief that were not raised in the North Carolina Supreme Court include both constitutional and nonconstitutional grounds. They consist of: denial of motion to sever the charges for trial; death qualifying of the jury; refusal to exclude for cause jurors who expressed certain beliefs; seating of an admittedly biased juror; admission of victim's hearsay statements; admission of defendant's in custody statements; denial of defendant's right of cross-examination of medical witness; showing photographs of the victim during autopsy procedures; restriction of defense counsel's argument to the jury re Smith's failure to testify; instructions regarding defendant's failure to testify; insufficiency of the evidence as to rape; insufficiency of the evidence as to first degree murder; improper arguments of prosecutors; failure to notify defendant of aggravating circumstances to be raised; provision of psychiatric reports to the prosecutor and compelled self-incrimination; admission of Smith's statements that he preferred the death penalty; prosecution's improper arguments to the jury during sentencing; enhancement of aggravating circumstances; use of a circumstance previously adjudicated in defendant's favor; improper statements of the court when setting forth the state's arguments re why this was heinous and cruel; instruction that jury's decision was a mere recommendation of sentence; burden of proof on the existence of mitigating factors; failure to peremptorily instruct that defendant had no prior criminal history; failure to allow the defendant the presumption of innocence of aggravating circumstances; failure to instruct the jury that it need not unanimously find the existence of mitigating circumstances; failure to instruct the jury on the effect of a non-unanimous verdict; failure to instruct the jury to take into account the mitigating circumstances when considering the aggravating circumstances; court's response to the jury's question regarding the significance of a life sentence; unconstitutional vagueness of the "heinous, atrocious, or cruel" instruction; arbitrariness of death penalty in North Carolina; discriminatory aspects of death penalty in North Carolina; general lack of justification for the death penalty under the Eighth Amendment; constitutional inadequacy of North Carolina's appellate review of death sentences; and fourteen ineffective assistance of counsel claims.
 
 
 [5]
 In Satterwhite, the Supreme Court did conduct a harmless error analysis of the admission of psychiatric testimony in violation of the Sixth Amendment. In conducting this analysis, the Satterwhite Court was simply considering the evidence presented to the jury less the improperly admitted psychiatric testimony. The United States Supreme Court, the Texas Court of Criminal Appeals, and the Baxter County District Court each considered the evidence introduced at the sentencing hearing in light of settled Texas law about the parameters of the "continuing threat to society" requirement. The Court was not required to develop or reshape Texas law; rather, it solely needed to consider the significance of one piece of evidence. In contrast, the majority would have us consider Smith's case in light of North Carolina law that was not in effect at the time the North Carolina trial court or the Supreme Court of North Carolina considered this case. Whether current North Carolina law reaches the conduct in which Smith engaged should be answered by the state whose law controls sentencing of criminals convicted in its courts
 
 
 [6]
 For this reason, cases like Rose and Cabana, which involved harmless-error analysis in other phases of capital murder cases are inapposite. In those cases, the critical issue was not whether a state had met the responsibility in shaping its laws, but rather whether an error made by the trial court in convicting the defendant was harmless under the principles enunciated in Chapman
 Neither, in my view, does Brecht v. Abrahamson, --- U.S. ----, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), cited by the majority, support its view that a federal habeas court can conduct a harmless-error analysis in this discrete area involving a state's process in "selecting" capital murder defendants for execution. In the first place, Brecht was not concerned with the parameters of federal habeas review but rather, it reshaped the standard by which federal courts conduct these analyses when harmless error analysis is appropriate. Consideration of the pivotal thrust of the Brecht opinion also illuminates the problem of federalism that is involved in federal courts conducting harmless error analysis in reviewing murder trials and how that problem would be exacerbated here. Under Brecht, if a state court conducts harmless-error review of a constitutional error, the defendant has the advantage of the State having to prove harmlessness beyond a reasonable doubt. If, however, the state court does not discover the error (as here), or does not review it for harmlessness (as here), the defendant would be significantly handicapped by a federal habeas review. The federal forum, under the scenario proposed by the majority, must only find that the error did not "substantially prejudice" the jury's decision. See id. --- U.S. at ----, 113 S.Ct. at 1725 (White, J., dissenting) (explaining the "illogically disparate treatment" caused by Brecht ).
 I think the final point of the majority's four-part summary also misses its intended mark. My colleagues assert that federal courts already conduct the same analyses involved in the harmless error equation when determining prejudice in the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), calculus. In judging prejudice in ineffective assistance of counsel cases, however, a federal habeas court is not judging whether the state has shaped its law in a constitutional fashion but rather, it is reviewing whether a violation of the Sixth Amendment affected the jury's verdict. While the factual analysis may be the same, there is a wide gap in the spectrum of federalism separating a federal court's judgment as to whether a defense counsel's conduct during a state criminal trial gives rise to a violation of the Sixth Amendment and a federal court's judgment on the effect of a conceded constitutional violation in this very discrete area of Eighth Amendment law. The latter requires a state to take prophylactic steps to assure that its laws pass constitutional muster, i.e., if a state is to impose the death penalty on a differentiated basis, it must design and administer the sentencing law so that the death penalty is not administered in an arbitrary fashion. An intrusion by a federal court would be taking over the state court's sentencing function and would be correcting an error of state law.
 
 
 [7]
 See Wiley v. Puckett, 969 F.2d 86 (5th Cir.1992), a circuit court opinion adopting that interpretation, albeit without discussion